[No. 69201-7.   En Banc.]
Argued September 28, 2000.      Decided March 22, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD ALLEN RADAN, *Petitioner*.

Timothy D. Trageser, for petitioner.

Thomas A. Metzger, Prosecuting Attorney, and Antonio D. Koures, Deputy, for respondent.

Mark W. Muenster on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

MADSEN, J. — In 1987, Richard A. Radan (Radan) was convicted of felony first degree theft in the state of Montana. After serving a portion of his sentence, Radan was granted an early discharge from supervision and pursuant to Montana law, all of Radan's civil rights, including his right to possess firearms, were automatically restored. Subsequently, Radan was charged under RCW 9.41.040 in

Pend Oreille County, Washington, with "second degree felon in possession of a firearm."

Radan moved to dismiss, arguing that because his right to possess firearms was fully restored in Montana, he could not be charged under Washington law as a felon in possession of a firearm. The Superior Court granted the motion and the State appealed. The Court of Appeals reversed. *State v. Radan*, 98 Wn. App. 652, 990 P.2d 962 (1999). Radan petitioned this Court for its review. We reverse.

## FACTS

The facts underlying Radan's Montana conviction are not in dispute. In 1987, Radan was convicted of felony first degree theft. In 1989, Radan's supervision was transferred to Washington State. In February 1994, Radan's Washington parole officer recommended, and Radan received, an early discharge from supervision by the State of Montana. As a result of his discharge and in accord with Montana law, Radan's civil rights, including his right to bear arms, were automatically restored by Montana. Upon his discharge Radan received a form letter from the Washington Department of Corrections stating:

> Congratulations, enclosed is an Order of Discharge signed by the Superior Court . . . . This Order signifies that you have successfully completed all sentence requirements. The Court has restored your rights to vote and hold public office. You must still contact the Bureau of Alcohol, Tobacco and Firearms to apply for restoration of your right to bear firearms.

Pet. for Review, ex. B.

On September 4, 1997, two deputy sheriffs were dispatched to Radan's home in Pend Oreille County. The officers were responding to a report by Radan that there was a prowler on his property. When the officers arrived on the call, Radan was wearing a holster with a handgun. During the course of the investigation, Radan indicated he also possessed a rifle in his home.

Officers learned that Radan had a 1987 felony conviction

for first degree theft in the state of Montana. Based upon this information a search warrant was obtained and executed for Radan's residence on September 9, 1997. During the search, two firearms were discovered: a .44 magnum handgun and a 7.65 caliber rifle. In a letter dated September 15, 1997, the Montana Department of Corrections informed the sheriff in Newport that Radan had been "successfully discharged from supervision" and that per Montana law his "full rights [were] restored upon termination of [the] offense . . . ." Pet. for Review, ex. C. The Pend Oreille County prosecutor nevertheless charged Radan by information under RCW 9.41.040(1)(b) with second degree felon in possession of a firearm.

Radan filed a motion in Superior Court to dismiss. The court granted the motion, finding that because Radan's civil rights were automatically and fully restored in Montana he could not be prosecuted as a felon in possession of a firearm in Washington. The State appealed and in a published opinion the Court of Appeals (Division Three) reversed, *Radan*, 98 Wn. App. 652. The court held that because Radan's civil rights were not restored based on a finding of "rehabilitation" or "innocence," as required by Washington law, he was still precluded from possessing a firearm in Washington despite Montana's restoration of his civil rights. Radan petitioned this Court for its review.

ANALYSIS

Radan does not dispute that Washington may "regulate the possession of firearms within its border." Resp. Br. at 7. Radan was charged under RCW 9.41.040, which makes it a crime for any person who has "previously been convicted in this state or elsewhere of any felony" to possess a firearm. RCW 9.41.040(1)(b)(i).[1] The term "convicted" includes any

---

[1] RCW 9.41.040 provides for differing levels of severity (first and second degree unlawful possession of a firearm) based on the predicate felony used to establish the offense. *See* RCW 9.41.040(1)(a), (b). Radan's Montana conviction was for felony theft and, thus, he was charged with unlawful possession of a firearm in the second degree.

instance in which

> a plea of guilty has been accepted, or a verdict of guilty has been filed, notwithstanding the pendency of any future proceedings including but not limited to sentencing or disposition, post-trial or post-factfinding motions, and appeals. Conviction includes a dismissal entered after a period of probation, suspension or deferral of sentence, and also includes equivalent dispositions by courts in jurisdictions other than Washington state.

RCW 9.41.040(3). *See also State v. Thomas*, 35 Wn. App. 161, 665 P.2d 914 (1983). The predicate offense for the charge against Radan was his 1987 conviction for felony first degree theft in the state of Montana.

The principal arguments advanced by Radan in this case center on the fact that, insofar as Montana law is concerned, he has been free to possess firearms since at least 1994. Under Montana law, "[c]onviction of an offense does not deprive the offender of a civil or constitutional right, except as provided in the Montana constitution or as specifically enumerated by the sentencing judge." MONT. CODE ANN. § 46-18-801(1). Furthermore, at the time of Radan's Montana conviction, Montana law provided that "[n]o person shall suffer any civil or constitutional disability not specifically included by the sentencing judge in his order of sentence," Mont. Code Ann. § 46-18-801 Notes, References, and Annotations, 1995 Amend., including the right to bear arms. *See United States v. Brooks*, 270 Mont. 136, 890 P.2d 759 (1995). Since the Montana sentencing judge's order is not present in the record, it is not known whether Radan ever lost the right to bear arms in Montana. Nevertheless, even if he did, this right was automatically restored upon his early discharge from supervision in 1994. Article II, section 28 of the Montana Constitution states:

> Section 28. Criminal justice policy — Rights of the convicted. (1) Laws for the punishment of crime shall be founded on the principles of prevention and reformation. (2) Full rights are restored by termination of state supervision for any offense against the state.

The Montana Criminal Code further provides that

> [e]xcept as provided in the Montana constitution, if a person has been deprived of a civil or constitutional right by reason of conviction for an offense and the person's sentence has expired or the person has been pardoned, the person is restored to all civil rights and full citizenship, the same as if the conviction had not occurred.

MONT. CODE ANN. § 46-18-801(2).

RCW 9.41.040(3) contains one relevant exception to the bar against an ex-felon possessing a firearm in Washington. It states:

> A person shall not be precluded from possession of a firearm if the conviction has been the subject of *a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted* or the conviction or disposition has been the subject of a *pardon, annulment, or other equivalent procedure based on a finding of innocence.*

RCW 9.41.040(3) (emphasis added).

Radan first argues that Montana's automatic restoration of his civil rights is an "other equivalent procedure," thus bringing him within the ambit of RCW 9.41.040(3)'s exception. Resp. Br. at 7. Radan further contends that even if the statute is not clear in this regard, it is nevertheless ambiguous and the rule of lenity should favor his proffered construction. *See State v. Lively*, 130 Wn.2d 1, 14, 921 P.2d 1035 (1996) ("[t]he rule of lenity provides that where an ambiguous statute has two possible interpretations, the statute is to be strictly construed in favor of the defendant"). On the other hand, the State argues, and the Court of Appeals agreed, that the statute is not ambiguous and that because Radan's automatic restoration of rights was not based on a "finding of rehabilitation" or a "finding of innocence" it cannot qualify as an "other equivalent procedure." RCW 9.41.040(3).

In construing a statute, this Court's primary objective is to ascertain and give effect to the intent of the

Legislature. *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). If a statute is unambiguous this Court is required to apply the statute as written and " 'assume[] that the legislature means exactly what it says.' " *In re Custody of Smith*, 137 Wn.2d 1, 9, 969 P.2d 21 (1998) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995)). The rule of lenity provides that if a criminal statute is ambiguous, it is to be interpreted in favor of the defendant. *Lively*, 130 Wn.2d at 14. If a statute is unambiguous, however, the rule of lenity is inapplicable. *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993); *Chapman v. United States*, 500 U.S. 453, 463-64, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991).

■ ■ We agree with the Court of Appeals that RCW 9.41.040(3) requires something more than an automatic restoration of an individual's civil rights. Absent a finding of innocence, the statute requires a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted" prior to an ex-felon being restored the right to bear arms. RCW 9.41.040(3). Radan attempts to parse the statute to exclude the explicit requirement that the "other equivalent procedure" be "based on a finding of the reha-bilitation of the person convicted." *Id*. Since no such finding is necessary for the automatic restoration of civil rights provided for by Montana law, automatic restoration is insufficient to trigger the exception under RCW 9.41.040(3).

Nor does Radan cite any authority supporting his inter-pretation. In fact, although neither party, nor the Court of Appeals, has addressed the point, the language used in RCW 9.41.040(3) is identical to the language of ER 609(c), which governs the admissibility of criminal convictions for impeachment purposes. ER 609(c) provides:

> Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a *pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted* . . . or

(2) the conviction has been the subject of a *pardon, annulment, or other equivalent procedure based on a finding of innocence.*

ER 609(c) (emphasis added).

The federal counterpart to this rule, Fed. R. Evid. 609(c), is identical to the Washington rule, and has been interpreted by the federal courts. Given the fact that the wording of this evidence rule and RCW 9.41.040(3) are identical, federal case law interpreting Fed. R. Evid. 609(c) is persuasive in this case.

Federal courts have consistently reached the conclusion that for a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure" to bar use of a criminal conviction for impeachment purposes there must be an actual finding that the person convicted has been rehabilitated. *Zinman v. Black & Decker, Inc.*, 983 F.2d 431 (2d Cir. 1993). For instance, in *Wilson v. Attaway*, 757 F.2d 1227 (11th Cir. 1985), the eleventh circuit, in determining whether a conviction under Georgia's first time offender statute could be used for impeachment, stated:

> The Georgia First Offender statute, as enacted at time of trial, authorized the court to place on probation a defendant who pleads guilty "without entering a judgment of guilt." O.C.G.A. § 42-8-60 (1982). Upon fulfillment of the terms of probation, the defendant is discharged. The discharge "shall completely exonerate the defendant of any criminal purpose and shall not affect any of his civil rights or liberties," and "the defendant shall not be considered to have a criminal conviction." O.C.G.A. § 42-8-62 (1982). Completion of probation without violation "permits the offender complete rehabilitation without the stigma of a felony conviction."
>
> Nevertheless, the statute does not provide for rehabilitation within the meaning of Rule 609(c).

*Id.* at 1244 (citations omitted).

According to the court, Fed. R. Evid. 609(c) "reflects 'a desire to accord a controlling consideration to rehabilitation as opposed to executive grace or judicial invalidation.'" *Id.* The same result was reached in *United States v. DiNapoli*, 557 F.2d 962 (2d Cir. 1977), where the second circuit held

that a "New York certificate of relief from disabilities . . . [is] not a certificate based on a finding either of defendant's rehabilitation or innocence and therefore was outside the scope of Rule 609(c)." *Id.* at 966. *See also United States v. Wiggins,* 566 F.2d 944 (5th Cir. 1978) (release from "halfway house," where the defendant was placed as a part of probation was not based on a finding of rehabilitation); *Biggs v. Nicewonger Co.,* 897 F. Supp. 483 (D. Or. 1995) (criminal conviction that has been set aside by the State of Oregon may be used to impeach because the set aside was not based on a finding of rehabilitation or innocence).

A similarly instructive case is *United States v. Wood,* 943 F.2d 1048 (9th Cir. 1991), which involved the interplay of Montana law and Fed. R. Evid. 609(c). In *Wood,* the defendant sought to preclude use of several Montana criminal convictions for impeachment purposes. For each of these Montana convictions, the defendant had petitioned a Montana court and been permitted to withdraw his guilty pleas based on a Montana statute. That statute provided:

> "Whenever the court has deferred the imposition of sentence and after termination of the time period during which imposition of sentence has been deferred, upon motion of the court, the defendant, or the defendant's attorney, the court may allow the defendant to withdraw his plea of guilty or may strike the verdict of guilty from the record and order that the charge or charges against him be dismissed. . . . After the charge is dismissed, all records and data relating to the charge are confidential criminal justice information."

*Id.* at 1055 (quoting MONT. CODE ANN. § 46-18-204).

Even though the above statute requires judicial discretion, the *Wood* court held that this was not an "other equivalent procedure based on a finding of the rehabilitation of the person convicted." RCW 9.41.040(3). Accordingly, it permitted the use of the expunged convictions for impeachment purposes. *Wood,* 943 F.2d at 1056. If a statute which places discretion in the court is not an "other equivalent procedure based on a finding of rehabilitation," then by

analogy the Montana provisions that operated to automatically restore Radan's civil rights cannot be an "other equivalent procedure" either. RCW 9.41.040(3).

██ Radan next contends that RCW 9.41.040 should be interpreted in the same manner as its federal counterpart, 18 U.S.C. § 922(g)(1). This provision criminalizes possession of a firearm by a person convicted of a felony in state or federal court, 18 U.S.C. § 922; however, as the Court of Appeals correctly noted, there are critical differences in language between the two statutes. The definitional component of the federal statute, 18 U.S.C. § 921(a)(20), provides:

> What constitutes a conviction of such crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned *or has had civil rights restored* shall not be considered a conviction for purposes of this chapter, unless such pardon, expungment, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

Unlike RCW 9.41.040, the federal statute provides an exception for all persons who have had their "civil rights restored" by the jurisdiction where the crime occurred. *See Beecham v. United States*, 511 U.S. 368, 114 S. Ct. 1669, 128 L. Ed. 2d 383 (1994) (holding that 18 U.S.C. § 922 allows only the convicting jurisdiction to restore civil rights, and finding it immaterial that many states never allow the full restoration of civil rights for convicted felons). Of the federal circuits addressing the question, nearly all have held that this includes the "automatic" restoration of civil rights provided for by many states, like Montana, upon completion of a criminal sentence. *United States v. Hall*, 20 F.3d 1066, 1069 (10th Cir. 1994) ("we join the circuits that view automatic restoration of civil rights as effective under the § 921(a)(20) exception"); *United States v. Thomas*, 991 F.2d 206 (5th Cir. 1993); *United States v. Dahms*, 938 F.2d

131 (9th Cir. 1991); *United States v. Essick*, 935 F.2d 28 (4th Cir. 1991); *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990); *but see United States v. Caron*, 64 F.3d 713, 718 (1st Cir. 1995) ("restoration require[s] individualized, affirmative action signifying that the state has placed renewed trust in the ex-felon").

Radan apparently fails to recognize that RCW 9.41.040 does not contain a provision similar to 18 U.S.C. § 921(a)(20). Indeed, under Washington law there must be "a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based" on either "a finding of the rehabilitation of the person convicted" or a "finding of innocence" before an ex-felon may regain the right to possess a firearm. RCW 9.41.040(3). The authority Radan cites is irrelevant in the face of Washington's statute.

■ Radan's final contention is that this Court should look beyond the automatic restoration of rights conferred by Montana law and look to the specific facts related to his "early" discharge from supervision. Radan was granted early discharge based upon Montana Code § 46-23-1011, which states:

> (6)(a) Upon recommendation of the probation and parole officer, a judge may conditionally discharge a probationer from supervision before expiration of the probationer's sentence if:
>
> (i) the judge determines that a conditional discharge from supervision:
>
> (A) is in the best interests of the probationer and society; and
>
> (B) will not present unreasonable risk of danger to the victim of the offense[.]

MONT. CODE ANN. § 46-23-1011. Radan contends that the statutory considerations are equivalent to a finding of rehabilitation. The Court of Appeals disagreed, concluding without the benefit of authority that "the exemption applies only when it is established that the procedure included a fact-finding inquiry resulting in a finding of the rehabilitation or innocence of the felon." *Radan*, 98 Wn. App. at 658. We disagree. Even though RCW 9.41.040 unambiguously

requires a "finding of rehabilitation," this phrase is undefined. Additionally, the Legislature's use of the phrase "other equivalent procedure" suggests the Legislature intended some deference to the practices of other jurisdictions, as long as the practice involved a finding of rehabilitation.[2]

The letter from the Montana Department of Corrections recommending Radan's early discharge indicates that the recommendation was based in part on the following facts: (1) Radan had no new arrests; (2) he had paid his restitution; and (3) he did not wish to return to Montana. However, more important is the fact that the statute authorizing Radan's early discharge requires a finding that a conditional discharge from supervision is in the best interests of the probationer and society and "will not present unreasonable risk of danger to the victim of the offense." MONT. CODE ANN. § 46-23-1011. While we decline to establish a precise definition for the phrase "finding of rehabilitation" we believe that for purposes of RCW 9.41.040 the finding in Radan's case is equivalent to an "other equivalent procedure" based upon a "finding of rehabilitation." *See United States v. Pagan*, 721 F.2d 24, 30 (2d Cir. 1983) ("certificate setting aside a youthful offender's conviction and unconditionally discharging him from further probation prior to expiration of the maximum term of probation clearly implies a finding that no further supervision is required, i.e., that this offender has been rehabilitated").[3]

Accordingly, we reverse the Court of Appeals and affirm the trial court's order of dismissal.

---

[2] Radan could have petitioned a Washington court to have his right to possess firearms restored, and the standard applied by a Washington court would have been far less stringent than that required for conditional discharge from probation under Montana law. RCW 9.41.040(4)(b)(i) provides that a person convicted of a felony may petition to have his right to possess firearms restored "after five or more consecutive years in the community without being convicted or currently charged with any felony, gross misdemeanor, or misdemeanor crimes."

[3] Due to our resolution of this issue, we will not address the parties' additional arguments.

## CONCLUSION

We hold that Montana's automatic restoration of civil rights provision does not exempt Radan from charges under RCW 9.41.040. However, Radan's early discharge from supervision under Montana Code § 46-23-1011 and the letter of discharge, combined with Montana's automatic restoration provisions, constitutes an "other equivalent procedure" based on a "finding of rehabilitation" under RCW 9.41.040(3).

ALEXANDER, C.J., and SMITH, JOHNSON, and SANDERS, JJ., concur.

TALMADGE, J.* (dissenting) — I agree with the majority that RCW 9.41.040(3) requires a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted" before Richard Radan's right to bear arms in Washington can be restored. I also agree Montana's statutory restoration of civil rights is essentially automatic and does not satisfy RCW 9.41.040(3). I part company with the majority when it finds Radan's early discharge from supervision and the automatic restoration of rights by the State of Montana upon the termination of state supervision together constitute a procedure equivalent to a finding of rehabilitation.

In enacting RCW 9.41.040(3), the Washington Legislature plainly intended an individualized assessment by an executive branch agency or judicial officer that the felon was absolved of guilt by a pardon or annulment or found to be rehabilitated before that felon's ability to possess firearms could be restored. The statutory language so states[4]

---

* Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

[4] The Court of Appeals below correctly noted the statutory language requiring a "finding of innocence" or a "finding of . . . rehabilitation," RCW 9.41.040(3), when it stated: "Indeed, the statutory exemption applies only when it is established that the procedure included a fact-finding inquiry resulting in a finding of the

and public safety requires no less. The public interest in denying access to firearms by convicted felons is patent.[5]

No individualized assessment of innocence or rehabilitation occurred in Radan's case. He was not innocent. Moreover, he was not rehabilitated, as that term is understood in Washington. The early discharge letter from Montana's Department of Corrections stated only that Radan had no new prior arrests, he had paid his restitution, and he did not want to return to Montana. While Montana's early release statute contemplates such early release may occur only if "a conditional discharge from supervision: (A) is in the best interests of the probationer and society; and (B) will not present unreasonable risk of danger to the victim of the offense," Mont. Code Ann. § 46-23-1011 (1999), that is not enough for purposes of RCW 9.41.040(3). There is no individualized finding by the Montana Department of Corrections that Radan is rehabilitated. Indeed, the Montana statute authorizing early release does not require it. A determination that early release is in the best interests of the probationer and the society and a requirement that the felon presents no "unreasonable risk of danger" to his victim is not equivalent to Washington's requirement of a finding of rehabilitation. Radan simply does not meet the mandate of RCW 9.41.040.

Ironically, if Radan had committed his crimes in Washington, his situation would be entirely different from what the majority now determines to be the law for Montana citizens with criminal histories residing in Washington.

In Washington, any felony conviction automatically results in the loss of the right to bear arms, whether or not the

---

rehabilitation or innocence of the felon in question." *State v. Radan*, 98 Wn. App. 652, 658, 990 P.2d 962 (1999). The use of the term "finding" implies an individualized assessment.

[5] Initiative 159 (Hard Time for Armed Crime) states: "Current law does not sufficiently stigmatize the carrying and use of deadly weapons by criminals, and far too often there are no deadly weapon enhancements provided for many felonies, including murder, arson, manslaughter, and child molestation and many other sex offenses including child luring." Codified in Laws of 1995, ch. 129, § 1(c). Declining to easily restore the right to possess firearms to convicted felons is such a stigmatization.

judgment so states. RCW 9.41.040(1). The loss of that right continues even after the sentence is served. A felon may possess a firearm "if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent *procedure based on a finding of the rehabilitation* of the person convicted." RCW 9.41.040(3) (emphasis added). The Montana procedure under which Radan was discharged from supervision is similar to that applied to Washington defendants convicted under the old indeterminate sentence system. When they completed parole, they were entitled to a certificate of final discharge under RCW 9.96.050. That certificate also served as a restoration of civil rights. But since no finding of rehabilitation was required for the Board to issue that certificate, "[t]his restoration of civil rights shall not restore the right to receive, possess, own, or transport firearms." RCW 9.96.050; *see also* 1993 Op. Att'y Gen. No. 10; 1988 Op. Att'y Gen. No. 10; 1969 Op. Att'y Gen. No. 5 (all reaching the same conclusion prior to the clarifying amendment to RCW 9.96.050).

Had Radan's theft conviction been entered in Washington, he would immediately have lost his right to bear arms, and the automatic restoration of civil rights upon completion of probation or parole would not permit him to possess firearms. He could petition the court to have his right to possess firearms restored, RCW 9.41.040(4). But until that relief were granted, possession would be unlawful under RCW 9.41.040(1).

The majority distorts the plain language of RCW 9.41.040 to restore the ability of a Montana felon to possess firearms in Washington. The Court of Appeals decision in this case was entirely correct. I would reverse the trial court's order granting Radan's motion to dismiss.

IRELAND and BRIDGE, JJ., and GUY, J. Pro Tem., concur with TALMADGE, J. Pro Tem.