[No. 82557-2.   En Banc.]
Argued May 12, 2011.     Decided December 1, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. R.P.H., *Petitioner*.

*Neil M. Fox* (of *Law Office of Neil Fox PLLC*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 ALEXANDER, J. — We granted R.P.H.'s petition to review a decision of the Court of Appeals in which that court affirmed the King County Superior Court's denial of R.P.H.'s petition for restoration of his right to possess firearms. We reverse the Court of Appeals, concluding that R.P.H.'s conviction was the subject of a procedure equivalent to a certificate of rehabilitation.

I

¶2 In 2000, 13-year-old R.P.H. pleaded guilty to one count of first degree child rape for sexually assaulting his 11- and 6-year-old sisters. At sentencing, the King County Juvenile Court accepted the State's recommendation to impose a special sexual offender disposition alternative that included a suspended term of commitment, 12 months of community supervision, sexual deviancy counseling, and various other conditions, including a requirement that R.P.H. "[n]ot possess or use a weapon of any kind." Clerk's Papers at 14. R.P.H. was advised that, as a consequence of pleading guilty to a felony sex offense, he could no longer possess a firearm and would be required to register as a sex

offender. R.P.H. was also notified orally and in writing about the prohibition regarding possession of a firearm pursuant to RCW 9.41.040 and RCW 9.41.047. At the disposition hearing, the juvenile court suggested that R.P.H.'s right to possess a firearm could be restored if he successfully completed treatment. Thereafter, R.P.H. successfully completed treatment and fulfilled the other conditions of his alternative disposition.

¶3 In 2007, R.P.H. petitioned the King County Superior Court to relieve him of the obligation to register as a sex offender and to reinstate his right to possess firearms.[1] In support of his petition for relief from the registration requirement, R.P.H. submitted a three-page letter from his deviancy counselor, Timothy Kahn. Kahn wrote that R.P.H. had successfully completed treatment in 2002, had graduated from high school in 2005, and was attending community college. Kahn stated, additionally, that he had met with R.P.H. and R.P.H.'s fiancée in order to review R.P.H.'s behavior, relationships, and lifestyle following his completion of his treatment. Kahn observed that R.P.H. had maintained a healthy, age-appropriate relationship for two years and had disclosed his sex offense history to his fiancée early in their relationship. Kahn supported R.P.H.'s request to terminate his registration requirement, opining that R.P.H. presented a low risk of reoffense.

¶4 The State opposed termination of the registration requirement as well as the restoration of R.P.H.'s right to possess a firearm. In support of its position, the State cited the nature of the offense and the fact that R.P.H. had received five traffic infractions since obtaining his driver's license. The State conceded, however, that R.P.H. had satisfied the requirements of former RCW 9.41.040(4) (2005) governing the restoration of firearm rights.

¶5 The superior court, relying on the provisions of former RCW 9A.44.140 (2002), granted R.P.H.'s request to termi-

---

[1] The record shows that R.P.H.'s family had a long tradition of hunting, this fact being made known to the juvenile court by R.P.H.'s father.

nate the registration requirement. It, however, denied his motion to restore his right to possess firearms, noting a concern over R.P.H.'s traffic infractions. The court told R.P.H., however, that he could try again in one year. When R.P.H. argued, based on *State v. Swanson*, 116 Wn. App. 67, 65 P.3d 343 (2003), that the court was required to reinstate his firearm rights if he satisfied the statutory requirements, the court invited him to file a motion for reconsideration.

¶6 R.P.H. duly moved for reconsideration. In its response to that motion, the State indicated that its earlier concession that R.P.H. had satisfied the statutory requirements for reinstating his right to possess firearms was erroneous. Relying on *Graham v. State*, 116 Wn. App. 185, 64 P.3d 684 (2003), the State asserted that R.P.H.'s juvenile adjudication of a class A felony sex offense prohibited him from ever having his firearm rights restored. The court denied R.P.H.'s motion for reconsideration without comment.

¶7 R.P.H. appealed the superior court's decision to the Court of Appeals, which affirmed. He then sought discretionary review in this court, raising statutory and constitutional issues. We deferred consideration of R.P.H.'s petition pending our decision in *State v. Sieyes*, 168 Wn.2d 276, 225 P.3d 995 (2010). After *Sieyes* became final, we granted R.P.H.'s petition.[2]

## II

¶8 Issues of statutory construction and constitutionality are questions of law subject to de novo review. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010); *State v. Chavez*, 163 Wn.2d 262, 267, 180 P.3d 1250 (2008).

---

[2] In *Sieyes*, we concluded that the Second Amendment to the United States Constitution applies to the states through the due process clause of the Fourteenth Amendment.

## III

¶9 R.P.H. presents a number of arguments in support of his position that his right to possess firearms should be restored. We find it unnecessary to address his constitutional argument and address only his assertion that because the requirement he register as a sex offender was terminated by the superior court, his right to possess firearms should be restored. In support of that argument, he relies on the provisions of RCW 9.41.040(3), which provide that "[a] person shall not be precluded from possession of a firearm if the conviction has been the subject of a . . . certificate of rehabilitation, or *other equivalent procedure* based on a finding of the rehabilitation of the person convicted." (Emphasis added.)

¶10 R.P.H. argues that the superior court, acting pursuant to former RCW 9A.44.140, made a finding equivalent to a certificate of rehabilitation when it terminated the requirement that he register as a sex offender. The State, citing *State v. Masangkay*, 121 Wn. App. 904, 91 P.3d 140 (2004), responds that there is no certificate of rehabilitation in Washington, saying that "[i]f the Legislature had wanted courts to treat certain Washington convictions as non-convictions under RCW 9.41.040(3), it would have identified the 'equivalent procedures' existing in Washington under which courts could do so." Suppl. Br. of Resp't at 15-16.[3]

¶11 Former RCW 9A.44.140(4)(b)(ii) (2000) provided that a court may relieve a person of the duty to register for a sex offense committed when the person was under the age

---

[3] In *Masangkay*, the 14-year-old defendant pleaded guilty to second degree robbery. When the defendant, Masangkay, turned 18 he petitioned the superior court for a certificate of rehabilitation so that he could join the United States Marine Corps. The superior court's order stating that the defendant was rehabilitated was reversed by the Court of Appeals on the basis that the superior court had no authority to issue a certificate of rehabilitation. We granted review of that decision but later dismissed review on the basis the case was moot.

of 15 if the person has not been adjudicated of any additional sex offenses or kidnapping offenses during the 24 months following the adjudication and "proves by a preponderance of the evidence that future registration . . . will not serve the purposes of RCW 9A.44.130, 10.01.200, 43.43.540, 46.20.187, 70.48.470, and 72.09.330." It is our view that the order of the superior court terminating R.P.H.'s registration requirement, which was based in part on a submission from his treatment provider, is tantamount to a determination that R.P.H. is rehabilitated.[4] It is, in sum, equivalent to a certificate of rehabilitation based on a finding of rehabilitation.

¶12 Our holding is entirely consistent with a prior decision of this court, *State v. Radan*, 143 Wn.2d 323, 21 P.3d 255 (2001). There we concluded that an early discharge from supervision by Montana authorities of a person who had been convicted in that state of first degree theft, combined with a letter from that state's department of corrections recommending discharge, was a procedure equivalent to a certificate of rehabilitation based on a " 'finding of the rehabilitation' " under RCW 9.41.040(3). *Id.* at 336. In reaching this decision, our court did not rely on the fact that Montana's early discharge of the defendant, Richard Radan, automatically restored all of his civil rights, including the right to bear arms. Rather, we looked to what the discharge procedure in Montana was based on in reaching our conclusion that it was equivalent to a certificate of rehabilitation pursuant to RCW 9.41.040(3).

¶13 Here we have a situation very similar to that in *Radan*, albeit with a superior court judge of this state discharging R.P.H. The fact that the discharge was ordered by a court, rather than a department of corrections of another state, does not render the discharge any less equiva-

---

[4] Notably, RCW 9A.44.143(3)(c) now provides that a court may relieve an offender of the duty to register if the petitioner "shows by a preponderance of the evidence that the petitioner is sufficiently *rehabilitated* to warrant removal from the central registry of sex offenders." (Emphasis added.)

lent to a certificate of rehabilitation. Indeed, in our view, it carries more force. In sum, we consider the superior court's order discharging R.P.H. from the necessity of registering as a sex offender to be equivalent to a certificate of rehabilitation under RCW 9.41.040(3). R.P.H. should, therefore, not be barred from exercising the right to possess firearms.

## IV

¶14  In light of our determination that R.P.H.'s conviction was the subject of a procedure equivalent to a certificate of rehabilitation, we do not address R.P.H.'s other arguments.[5] We reverse the Court of Appeals' decision affirming the superior court's order denying R.P.H.'s petition to have his right to possess firearms restored.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶15  MADSEN, C.J. (dissenting) — Former RCW 9.41.040(4) (2005)[6] provides that a person convicted of a sex offense can never petition for restoration of the right to possess firearms. Nevertheless, the majority says that when a trial judge in this state terminates a sex offender registration requirement, such action is "equivalent" to a finding of rehabilitation under RCW 9.41.040(3), and a defendant may rely on the trial court's action as an end-run to evade the prohibition in former subsection (4). This makes no sense; if a trial judge lacks authority to restore gun rights to

---

[5] R.P.H. claims that a lifetime ban on firearm possession for an adult who was convicted of a juvenile offense violates the Second Amendment to the United States Constitution. He also asserts that the juvenile court judge's statement to R.P.H. that his right to possess firearms could be restored in the future was binding on the superior court.

[6] The version of this statute in effect during the relevant time period will be used throughout this opinion.

a sex offender, surely a trial court's decision to terminate a reporting requirement cannot become an "equivalent" procedure that would permit the trial court to do what the legislature has specifically prohibited in the same statute.

¶16 The majority says, though, that its decision is supported by our decision in *State v. Radan*, 143 Wn.2d 323, 21 P.3d 255 (2001). It is not. In *Radan* we were asked to interpret the phrase "equivalent procedure" in subsection (3) to determine whether a Montana procedure (conditional discharge from probation) was equivalent to a certificate of rehabilitation. We reasoned that the legislature's use of the phrase "other equivalent procedure" suggests the legislature intended some deference to the practices of other jurisdictions as long as the practice involved a finding of rehabilitation. In a footnote, we said the defendant in *Radan* could have petitioned a Washington court to have his right to possess firearms restored under former RCW 9.41.040(4)(b)(i) and that the standard applied by a Washington court would have been far less stringent than that required for conditional discharge from probation under Montana law. Contrary to the majority's assertion, *Radan* did not implicitly recognize that superior courts can issue certificates of rehabilitation; rather, we noted that the procedure a superior court in this state must follow is provided by former subsection (4).

¶17 Here, unlike in *Radan*, R.P.H. falls squarely within the prohibition of former RCW 9.41.040(4). I respectfully dissent.

## Discussion

¶18 R.P.H. argues, and the majority agrees, that former RCW 9.41.040 should be interpreted to allow him to have his firearm rights restored. That statute provides, in pertinent part:

(1)(a) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if

the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter.

(b) Unlawful possession of a firearm in the first degree is a class B felony punishable according to chapter 9A.20 RCW.

(2)(a) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the second degree, if the person does not qualify under subsection (1) of this section for the crime of unlawful possession of a firearm in the first degree and the person owns, has in his or her possession, or has in his or her control any firearm:

(i) After having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any felony not specifically listed as prohibiting firearm possession under subsection (1) of this section, or any of the following crimes when committed by one family or household member against another, committed on or after July 1, 1993: Assault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provisions of a protection order or no-contact order restraining the person or excluding the person from a residence (RCW 26.50.060, 26.50.070, 26.50.130, or 10.99.040);

(ii) After having previously been involuntarily committed for mental health treatment under RCW 71.05.320, 71.34.090, chapter 10.77 RCW, or equivalent statutes of another jurisdiction, unless his or her right to possess a firearm has been restored as provided in RCW 9.41.047;

(iii) If the person is under eighteen years of age, except as provided in RCW 9.41.042; and/or

(iv) If the person is free on bond or personal recognizance pending trial, appeal, or sentencing for a serious offense as defined in RCW 9.41.010.

(b) Unlawful possession of a firearm in the second degree is a class C felony punishable according to chapter 9A.20 RCW.

(3) Notwithstanding RCW 9.41.047 or any other provisions of law, as used in this chapter, a person has been "convicted", whether in an adult court or adjudicated in a juvenile court, at

such time as a plea of guilty has been accepted, or a verdict of guilty has been filed, notwithstanding the pendency of any future proceedings including but not limited to sentencing or disposition, post-trial or post-factfinding motions, and appeals. Conviction includes a dismissal entered after a period of probation, suspension or deferral of sentence, and also includes equivalent dispositions by courts in jurisdictions other than Washington state. A person shall not be precluded from possession of a firearm if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction or disposition has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence. Where no record of the court's disposition of the charges can be found, there shall be a rebuttable presumption that the person was not convicted of the charge.

(4) Notwithstanding subsection (1) or (2) of this section, a person convicted or found not guilty by reason of insanity of an offense prohibiting the possession of a firearm under this section other than murder, manslaughter, robbery, rape, indecent liberties, arson, assault, kidnapping, extortion, burglary, or violations with respect to controlled substances under RCW 69.50.401 and 69.50.410, who received a probationary sentence under RCW 9.95.200, and who received a dismissal of the charge under RCW 9.95.240, shall not be precluded from possession of a firearm as a result of the conviction or finding of not guilty by reason of insanity. Notwithstanding any other provisions of this section, if a person is prohibited from possession of a firearm under subsection (1) or (2) of this section and has not previously been convicted or found not guilty by reason of insanity of a sex offense prohibiting firearm ownership under subsection (1) or (2) of this section and/or any felony defined under any law as a class A felony or with a maximum sentence of at least twenty years, or both, the individual may petition a court of record to have his or her right to possess a firearm restored:

(a) Under RCW 9.41.047; and/or

(b)(i) If the conviction or finding of not guilty by reason of insanity was for a felony offense, after five or more consecutive

years in the community without being convicted or found not guilty by reason of insanity or currently charged with any felony, gross misdemeanor, or misdemeanor crimes, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525; or

(ii) If the conviction or finding of not guilty by reason of insanity was for a nonfelony offense, after three or more consecutive years in the community without being convicted or found not guilty by reason of insanity or currently charged with any felony, gross misdemeanor, or misdemeanor crimes, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525 and the individual has completed all conditions of the sentence.

Former RCW 9.41.040 (reviser's note omitted).

¶19 Relying on RCW 9.41.040(3), the majority concludes that the superior court's order relieving R.P.H. of his obligation to register as a sex offender was the equivalent of a "certificate of rehabilitation."

¶20 The majority says that its interpretation is consistent with our prior decision in *Radan*. The majority is mistaken. As mentioned above in *Radan*, the question was whether a Montana procedure was the "equivalent" of a certificate of rehabilitation. Although we determined that Montana's statutory restoration of civil rights, which was not based on a "finding of . . . rehabilitation," but was virtually automatic, did not qualify as an "equivalent procedure" under RCW 9.41.040(3), we went on to hold that the defendant's early discharge from supervision pursuant to the Montana Criminal Code, combined with a letter from the Montana Department of Corrections finding that his release was "in the best interests of the probationer and society and 'will not present unreasonable risk of danger to the victim of the offense,'" did qualify as an "equivalent procedure." *Radan*, 143 Wn.2d at 334-35 (quoting Mont. Crim. Code § 46-23-1011). In doing so, we said, "[T]he

Legislature's use of the phrase 'other equivalent procedure' suggests the Legislature intended some deference to the practices of *other jurisdictions*, as long as the practice involved a finding of rehabilitation." *Id.* at 335 (emphasis added). We did not imply that such a practice exists in Washington. Indeed, we noted that the defendant could have petitioned a Washington court to have his right to possess firearms restored under former RCW 9.41-.040(4)(b)(i). *Id.* at 335 n.2.

¶21 My view is that there is no implicit procedure in Washington for making a finding of rehabilitation to petition for restoration and there is additional support in *State v. Masangkay*, 121 Wn. App. 904, 906, 91 P.3d 140 (2004). In that case, a 14-year-old pleaded guilty to second degree robbery. When he was 18, nearly three years after being released from custody, he decided to join the Marine Corps. He filed a petition in the superior court for a certificate of rehabilitation so that he could legally possess firearms. After considering evidence that he had made "substantial achievements toward becoming a good student and citizen during his time out of custody," the superior court granted the petition. *Id.* at 907. The Court of Appeals reversed, holding that Washington courts do not have the statutory or inherent authority to issue certificates of rehabilitation. *Id.* at 910, 914.

¶22 The court noted that other jurisdictions, such as California and Mississippi, have authorized courts to issue certificates of rehabilitation and that both state and federal evidentiary rules acknowledge their existence. In fact, as this court had pointed out earlier in *Radan*, 143 Wn.2d at 330-31, the language used in RCW 9.41.040(3) is identical to the language of ER 609(c), governing the admissibility of criminal convictions for impeachment purposes.[7] ER 609(c),

---

[7] ER 609(c) provides:

Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or

in turn, was modeled on Federal Rule of Evidence 609(c). Reviewing this evidence, the Court of Appeals concluded that "in defining exceptions to the law prohibiting convicted felons from possessing firearms, the legislature used the evidentiary rules as a template for acknowledging the effect of existing procedures, not to create new ones." *Masangkay*, 121 Wn. App. at 911.

¶23 The court also considered the fact that, in contrast to former RCW 9.41.040(4), which contains "important criteria for the courts to apply when reinstating firearm rights," RCW 9.41.040(3) provides courts with no guidance in determining what constitutes rehabilitation. *Id.* at 909. The court regarded the absence of any criteria for issuing a certificate of rehabilitation as evidence that the legislature did not intend to create such a procedure in Washington. *Id.* at 910. It observed that this conclusion was consistent with its earlier opinion in *Smith v. State*, 118 Wn. App. 464, 470, 76 P.3d 769 (2003), where it was said, "As currently drafted, there is no provision in Washington statutes for the issuance of a certificate of rehabilitation."

¶24 R.P.H. argues that *Masangkay* conflicts with this court's decision in *Radan*, which, he claims, implicitly recognized that superior courts may issue certificates of rehabilitation under RCW 9.41.040(3). As I have explained above, he is mistaken.

¶25 In sum, if a superior court cannot issue a certificate of rehabilitation in Washington, it follows that it may not issue the equivalent. The majority's conclusion that the superior court's order terminating his registration requirement is an "equivalent" procedure for restoration of his firearm rights under RCW 9.41.040(3) is without support in the statutory language (when read in context) or from case law.

---

other equivalent procedure based on a finding of the rehabilitation of the person convicted . . . or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

¶26 The majority's conclusion is implicitly contrary to legislative intent. The statute contemplates that certain procedures that in fact exist under state law can affect whether an individual is "convicted," i.e., if the conviction has been the subject of a pardon or annulment based on rehabilitation or innocence, an individual is not "convicted" under the statute and is not precluded from possessing a firearm. RCW 9.41.040(3); *see* 2002 Op. Att'y Gen. No. 4, at 6. On the other hand, the same subsection defines a "conviction" for purposes of the statute to include a juvenile adjudication and to include "a dismissal entered after a period of probation, suspension or deferral of sentence." RCW 9.41.040(3); *see* 2002 Op. Att'y Gen. No. 4, at 4. Under the statute, such a dismissal permits the individual to regain the right to possess firearms in the case of many convictions, but not in the case of a conviction for one of the enumerated offenses in former RCW 9.41.040(4)(a): "murder, manslaughter, robbery, rape, indecent liberties, arson, assault, kidnapping, extortion, burglary" and certain "violations with respect to controlled substances."

¶27 Taken together, the provisions of the statute show that the legislature intentionally adopted a scheme where certain convictions are deemed so serious that they deprive the individual of the right to possess a firearm even when the offense was committed by a juvenile and even if a dismissal after probation, suspension, or deferral of a sentence occurs, subject only to one actually available, existing exception under Washington law—a pardon based on rehabilitation or innocence. RCW 9.96.010; RCW 9.41.040(3); 2002 Op. Att'y Gen. No. 4, at 6[8] ("a person pardoned by the governor <u>with a finding of innocence, or of rehabilitation</u>, is not 'convicted' as that term is defined" in the statute). Thus, with this one exception, a conviction for one of the enumerated offenses in RCW 9.41.040(4) continues to preclude

---

[8] As addressed in *Radan,* an equivalent procedure in another state may effectively "erase" a conviction for purposes of the statute.

lawful firearm possession notwithstanding subsequent events.

¶28 Rape is one of the specifically identified offenses singled out by the legislature as being so serious as to require a ban on possession of firearms, subject only to a limited, extraordinary event. Given this, I believe that the majority decision is contrary to legislative intent. In my view, termination of the sex offender registration requirement is not an event that the legislature intended to trigger restoration of rights following a conviction for rape.

¶29 Because I disagree with the majority, I must address R.P.H.'s remaining arguments.

¶30 Turning first to the remaining statutory arguments, R.P.H. urges that the words "previously . . . convicted" in former subsection (4) refer to a time before the conviction that resulted in the firearms prohibition, not to the time before the petition. He reasons that because he did not commit a sex offense or class A felony before pleading guilty to first degree child rape, he is entitled to seek the restoration of his firearm rights.

¶31 The Court of Appeals has previously rejected this argument, calling the notion that the statute allows a person to be convicted of *two* sex offenses before forfeiting the right to possess firearms "absurd." *Graham v. State*, 116 Wn. App. 185, 189-90, 64 P.3d 684 (2003) ("reference to 'previous convictions' in the second sentence of [former] RCW 9.41.040(4) [(1997)] means any conviction prior to the time of the petition, not a conviction prior to the one that disabled the petitioner's firearm rights"); *see also Smith v. State*, 118 Wn. App. 464, 470, 76 P.3d 769 (2003) ("Because Mr. Smith was convicted of a sex offense, he cannot have his firearm rights restored."); *Nakatani v. State*, 109 Wn. App. 622, 625, 36 P.3d 1116 (2001).

¶32 R.P.H. suggests that our recent decision in *Rivard v. State*, 168 Wn.2d 775, 231 P.3d 186 (2010), casts doubt on *Graham*, but it does not. In *Rivard*, we concluded that the

term "prior felony convictions" in former subsection (4)(b)(i) refers to "felonies occurring prior to the disabling offense." *Id.* at 784.[9] We did not say that "previously . . . convicted" also means convicted "prior to the disabling offense." Indeed, if we accepted R.P.H.'s interpretation, that portion of the statute would be swallowed up by former subsection (4)(b)(i), which, as *Rivard* explained, bars a person who has a "prior felony conviction[ ]," i.e., a conviction prior to the disabling offense "counted as part of the offender score." Former RCW 9.41.040(4)(b)(i). The offender score statute provides that "[c]lass A and sex prior felony convictions *shall always be included in the offender score.*" RCW 9.94A-.525(2)(a) (emphasis added).[10] Thus, a person convicted of a prior sex offense or a class A felony who commits a subsequent felony will always be prohibited from filing a petition under former subsection (4)(b)(i).

¶33 If the "previously . . . convicted" language of former RCW 9.41.040(4) is to have any independent significance, it must encompass the conviction that triggered the firearms prohibition. In other words, the requirement that a person "has not previously been convicted" of a sex offense or a class A felony means that the person has *never* been convicted of such an offense. Former RCW 9.41.040 may not be a model of clarity, but it is not reasonably susceptible to R.P.H.'s interpretation. Because R.P.H. was convicted of a sex offense, he may not file a petition pursuant to former RCW 9.41.040(4).

¶34 Next, R.P.H. contends that because the juvenile court told him that he could file a petition to have his firearm rights restored in the future, applying the statutory prohibition to him would deprive him of due process. He

---

[9] Given that former subsection (4)(b)(i) speaks of "prior felony convictions . . . counted as part of the offender score," and the offender score statute defines a "prior conviction" as "a conviction which exists before the date of sentencing for the offense for which the offender score is being computed," RCW 9.94A.525(1), that conclusion is inescapable.

[10] The offender score statute already contained this provision when the legislature amended RCW 9.41.040(4) in 1995. *See* former RCW 9.94A.360(2) (1995).

relies on *State v. Minor*, 162 Wn.2d 796, 174 P.3d 1162 (2008), and *State v. Leavitt*, 107 Wn. App. 361, 27 P.3d 622 (2001), where the defendants' convictions for unlawful possession of a firearm were reversed because the court that sentenced them for the predicate offense failed to provide oral and written notice that as a consequence of being convicted, they were prohibited from possessing a firearm, as required by RCW 9.41.047.[11] *Leavitt* and *Minor* stand for the proposition that convicting a person for reasonably and in good faith doing what he was led to believe was lawful is fundamentally unfair. *See Leavitt*, 107 Wn. App. at 372.

¶35 This case presents a very different situation. R.P.H. has not been convicted of unlawful possession of a firearm after being led to believe that it was lawful to possess one. Although the juvenile court told R.P.H. that his right to possess a firearm could one day be reinstated, the court complied with its statutory duty to notify R.P.H. orally and in writing that he could not possess firearms until his right to do so was restored by a court of record. That R.P.H. is prohibited by his child rape conviction from having his firearm rights restored, despite the juvenile court's contrary representation, does not raise the same due process concerns as convicting a person for conduct that a court said was permissible. Simply put, the juvenile court's statement that R.P.H. could have his right restored cannot compel a future court to violate the statute prohibiting its restoration.

¶36 Next, R.P.H. argues that a lifelong ban on the possession of firearms based on a juvenile adjudication of a class A felony sex offense violates the Second Amendment to the United States Constitution.

---

[11] RCW 9.41.047 states, "At the time a person is convicted . . . of an offense making the person ineligible to possess a firearm . . . the convicting . . . court shall notify the person, orally and in writing, that the person must immediately surrender any concealed pistol license and that the person may not possess a firearm unless his or her right to do so is restored by a court of record."

¶37 The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570, 573, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), the United States Supreme Court held that several "District of Columbia [statutes] prohibit[ing] . . . the possession of usable handguns in the home violate[d] the Second Amendment."[12] In doing so, the Court concluded, "[O]n the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms" for the "core lawful purpose of self-defense." *Id.* at 595, 630. The Court noted, however, that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. It observed that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. Responding to criticism that it had not provided "extensive historical justification" for such prohibitions, the Court responded that, "since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field." *Id.* at 635. The Court said that "whatever else it leaves to future evaluation," the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* Therefore, it concluded that "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to "keep" and use for the protection of one's home and family,' would fail constitutional muster." *Id.* at

---

[12] The statutes in question prohibited the registration of handguns and criminalized the possession of unregistered handguns. It also required lawfully registered long guns to be "bound by a trigger lock" or kept disassembled. *Heller*, 554 U.S. at 575.

628-29 (footnote omitted) (quoting *Parker v. Dist. of Columbia*, 478 F.3d 370, 400, 375 U.S. App. D.C. 140 (2007)).[13]

¶38 R.P.H. contends that permanently depriving him of the right to bear arms based on a juvenile sex offense violates the Second Amendment, as construed in *Heller*. He asks us to depart from our recent decision in *Sieyes* and review his challenge by applying strict scrutiny to former RCW 9.41.040(4). In *Sieyes*, we did not adopt a particular level of scrutiny, noting that in *Heller*, the United States Supreme Court had expressly " 'declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions.' " *State v. Sieyes*, 168 Wn.2d 276, 294, 225 P.2d 995 (2010) (quoting *Heller*, 554 U.S. at 634). Instead, we said that "we look to the Second Amendment's original meaning, the traditional understanding of the right, and the burden imposed . . . by upholding the statute." *Id.* at 295. R.P.H., noting the comparisons in *Heller* between the First and Second Amendments, *e.g.*, *Heller*, 554 U.S. at 634-35 ("Like the First, [the Second Amendment] is the very *product* of an interest balancing by the people."), argues that "[t]here would be a glaring doctrinal inconsistency not to apply the same level of strict scrutiny to state regulation of arms as is applied to speech." He asserts that we have "consistently utilized strict scrutiny wherever *core* constitutional rights are at stake." Suppl. Br. of Pet'r at 3 (emphasis added).

¶39 Assuming, for the moment, that strict scrutiny would sometimes be appropriate, the problem with R.P.H.'s

---

[13] In *State v. Sieyes*, 168 Wn.2d 276, 291, 225 P.3d 995 (2010), this court held that the Second Amendment right recognized in *Heller* applied to the states through the Fourteenth Amendment, anticipating the United States Supreme Court's decision in *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3036, 3059, 177 L. Ed. 2d 894 (2010). In *McDonald*, the Court described the right to keep and bear arms as " 'deeply rooted in this Nation's history and tradition' " (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)) and "among those fundamental rights necessary to our system of ordered liberty." 130 S. Ct. at 3023. A four-justice lead opinion, authored by Justice Alito, concluded that the Second Amendment right recognized in *Heller* is incorporated by the due process clause of the Fourteenth Amendment. *Id.* at 3050. Justice Thomas, on the other hand, viewed the right to keep and bear arms as a privilege of American citizenship, incorporated by the privileges or immunities clause. *Id.* at 3059.

argument is that the former RCW 9.41.040 does not appear to burden a "core" constitutional right. While *Heller* recognized that the Second Amendment protected an individual right to keep and bear arms "for the core lawful purpose of self-defense," it expressly limited the scope of the right to "law-abiding, responsible citizens." *Heller*, 554 U.S. at 630, 635. Therefore, before settling on an appropriate level of scrutiny, it is necessary first to determine whether R.P.H. is even "qualified [to] exercise . . . Second Amendment rights." Such an approach is consistent with that taken by other courts that have considered Second Amendment challenges in the wake of *Heller. United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) ("As we read *Heller*, it suggests a two-pronged approach. . . . First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny.").

¶40 Naturally, the State argues that, as a felon, "R.P.H. cannot avail himself of Second Amendment protections." Suppl. Br. of Resp't at 21. "To the extent *Heller* provides an answer to this question, it would be found in the Court's truncated discussion of the limitations on the right to bear arms preserved by the Second Amendment." *United States v. Chester*, 628 F.3d 673, 678 (4th Cir. 2010). As noted previously, the United States Supreme Court stated that "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The Court observed that "[f]rom Blackstone through the 19th Century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* Illustrating this point, the Court related that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were unlawful under the Second Amendment or state analogues." *Id.* Although the Court declined to "undertake an exhaustive

historical analysis . . . of the full scope of the Second Amendment," it cautioned that "nothing in our opinion should be taken to cast doubt on *longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27 (emphasis added). The Court noted that, although this "list does not purport to be exhaustive," such "regulatory measures" were "presumptively lawful." *Id.* at 627 n.26.

¶41 Courts have recognized that the phrase "presumptively lawful" is susceptible to different interpretations. "On the one hand, this language could be read to suggest the identified restrictions are presumptively lawful because they regulate conduct outside the scope of the Second Amendment. On the other hand, it may suggest the restrictions are presumptively lawful because they pass muster under any standard of scrutiny." *Marzzarella*, 614 F.3d at 91. Courts have generally concluded that the former is the better reading and that these "longstanding limitations" are exceptions to the right to bear arms. *See, e.g., People v. Delacy*, 192 Cal. App. 4th 1481, 1490, 122 Cal. Rptr. 3d 216 (2011). *But see United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1674 (2011). Thus, virtually all have upheld laws prohibiting the possession of firearms by felons without subjecting them to some level of means-end scrutiny on the ground that "felons are categorically different from the individuals who have a fundamental right to bear arms." *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir.), *cert. denied*, 131 S. Ct. 294 (2010); *see also United States v. Rozier*, 598 F.3d 768, 771 (11th Cir.), *cert. denied*, 130 S. Ct. 3399 (2010).

¶42 Although RCW 9.41.040(4) appears to fall squarely within the category of "presumptively lawful" firearm prohibitions, R.P.H. urges us not to read too much into *Heller*'s "dicta," citing the Seventh Circuit Court of Appeals warn-

ing, "We do not think it profitable to parse these passages of *Heller* as if they contained an answer to the question whether [18 U.S.C.] § 922(g)(9) is valid. They are precautionary language. Instead of resolving questions such as the one we must confront, the Justices have told us that the matters have been left open." *Skoien*, 614 F.3d at 640.[14] *Heller*'s list of "presumptively lawful" regulations, however, is not dicta. *Rozier*, 598 F.3d at 771 n.6 ("to the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by *law-abiding* and *qualified* individuals, it is not dicta"). *But see United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir.), *cert. denied*, 131 S. Ct. 158 (2010); *Skoien*, 614 F.3d at 639; *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (Tymkovich, J., concurring), *cert. denied*, 559 U.S. 970 (2010). Rather, it represents a limitation on the "scope of the Second Amendment." *Heller*, 554 U.S. at 626. Indeed, the Court began its discussion by saying that "the right secured by the Second Amendment is not unlimited." *Id.* (emphasis added). In the very next passage, the Court identified "another important limitation on the right to keep and carry arms," explaining that the "limitation" it had recognized in *United States v. Miller*, 307 U.S. 174, 59 S. Ct. 816, 83 L. Ed. 1206 (1939), that the "sorts of weapons protected were those 'in common use at the time,'" is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (citations omitted). Finally, the Court's instruction to the District of Columbia to "permit [Heller] to register his handgun and . . . issue him a license to carry it in the home" was contingent on a determination that he was not "disqualified from the exercise of Second Amendment rights," which apparently meant "not a felon and . . . not insane." *Id.* at 631, 635. Thus, "the Supreme

---

[14] Notably, the statute at issue in *Skoien*, 18 U.S.C. § 922(g)(9), prohibits the possession of firearms by those convicted of misdemeanor domestic violence and, thus, is not included in *Heller*'s list of "presumptively lawful" regulations. Thus, the court felt that it was necessary to look beyond that language in order to uphold the statute.

Court's discussion . . . of the categorical exceptions to the Second Amendment was not abstract and hypothetical; it was outcome determinative. As such, we are bound by it." *United States v. Barton*, 633 F.3d 168, 172 (3d Cir. 2011).

¶43  R.P.H. suggests that the list of "longstanding prohibitions" does not apply to his situation because he is not challenging the underlying firearm prohibition that was imposed at the time he was sentenced under former RCW 9.41.040(1), but rather the permanent bar imposed by former RCW 9.41.040(4). In either case, the prohibition is based on his conviction of a felony and, thus, falls within the category of "presumptively lawful" regulations. He also argues that he is not a "felon" within *Heller*'s meaning because he was convicted as a juvenile. This argument also fails. I recognize that RCW 13.04.240 states that "[a]n order of court adjudging a child a juvenile offender or dependent under the provisions of this chapter shall in no case be deemed a conviction of crime" and that this court has held that, although a juvenile can be convicted of an offense, he cannot be convicted of a *felony*. *State v. Michaelson*, 124 Wn.2d 364, 367, 878 P.2d 1206 (1994). However, as the Court stated in *Heller*, its list of presumptively lawful regulations is not exclusive. R.P.H. is not sufficiently distinguishable from the class of people categorically barred from raising a Second Amendment challenge. Therefore, I would hold that R.P.H. cannot avail himself of the protections of the Second Amendment.

¶44  I would affirm the Court of Appeals.

WIGGINS, J., concurs with MADSEN, C.J.