# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JERRY L. BARR III, | No. 50623-8-II |
| Appellant, | |
| v. | |
| SNOHOMISH COUNTY SHERIFF, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — In 1992, a juvenile court adjudicated Jerry L. Barr guilty of two class A felonies. Over 25 years later, in 2016, the juvenile court entered an order sealing Barr's juvenile records of the two felony adjudications. Barr then applied for a concealed pistol license (CPL) through the Snohomish County Sheriff's Office (Sheriff). The Sheriff denied Barr's application based on these felony adjudications. Barr petitioned the superior court for a writ of mandamus to compel the Sheriff to issue him a CPL, and the superior court denied his petition. Because under the juvenile sealing statute sealed adjudications are to be "treated as if they never occurred," Barr is not prohibited from obtaining a CPL and the superior court erroneously denied Barr's writ of mandamus. We, therefore, reverse and remand with instructions to the superior court to issue the writ. We also grant Barr's request for attorney fees.

No. 50623-8-II

FACTS

I. Background

This case requires us to analyze the juvenile sealing statute. In the 19th century, Washington established a separate court division dedicated to juvenile issues with the intention of protecting the interests of juveniles, rather than prosecuting juveniles in the same manner as adult defendants. *See* LAWS OF 1905, ch. 18, § 3.[1] Throughout the years, the legislature has expanded the juvenile court system reflecting national changes regarding the treatment of juvenile offenders. *See State v. S.J.C.*, 183 Wn.2d 408, 422-23, 352 P.3d 749 (2015).

In 1977, the legislature overhauled the juvenile justice statutes and specified substantive and procedural guidelines for juvenile courts by enacting the Juvenile Justice Act of 1977 (JJA). LAWS OF 1977, 1st Ex. Sess., ch. 291, § 55.[2] With the JJA, the legislature "changed the philosophy and methodology of addressing the personal and societal problems of juvenile offenders." *State v. Lawley*, 91 Wn.2d 654, 659, 591 P.2d 772 (1979).

With the 1977 amendments, the legislature also addressed how juvenile proceeding records and official juvenile court files were to be treated. Though the JJA affirmed that juvenile proceeding records and court files were public records, the legislature also created a mechanism for juvenile offenders to have their records sealed or destroyed. *State v. J.C.*, 192 Wn. App. 122, 128, 366 P.3d 455 (2016). The JJA allowed a juvenile to have his or her records sealed two years after the end of a proceeding and destroyed when the juvenile reached 23 years of age.

_____

[1] Available at: http://leg.wa.gov/CodeReviser/documents/sessionlaw/1905c18.pdf

[2] Available at: http://leg.wa.gov/CodeReviser/documents/sessionlaw/1977ex1c291.pdf

LAWS OF 1979, 1st Ex. Sess., ch. 155, § 9(11); (16).[3]  By establishing a method to seal juvenile records, the legislature reiterated its desire to treat juvenile records more confidentially than other court records.  *See S.J.C.*, 183 Wn.2d at 422.

The juvenile sealing and destruction provisions underwent more changes in 1997.  At that time, the legislature amended the sealing and destruction statutes and made the sealing and expungement process more difficult by imposing additional requirements and conditions.  *State v. Diaz-Cardona*, 123 Wn. App. 477, 485, 98 P.3d 136 (2004).  However, although the legislature made it more difficult to seal and destroy juvenile records, the legislature did not eradicate the sealing process.  *See State v. J.H.*, 96 Wn. App. 167, 176, 978 P.2d 1121 (1999).

Then in 2014, the legislature again amended the JJA's juvenile court record sealing provisions.  LAWS OF 2014, ch. 175, §§ 3-5.[4]  The legislature mandated that the juvenile courts, instead of juveniles, must initiate the sealing of juvenile court records after a certain amount of time and after the juvenile offender met certain conditions.  LAWS OF 2014, ch. 175, § 4.  The legislature also clearly stated its intent regarding the protection of juvenile records:

> It is the policy of the state of Washington that the interest in juvenile rehabilitation and reintegration constitutes compelling circumstances that outweigh the public interest in continued availability of juvenile court records.

LAWS OF 2014, ch. 175, § 1.  The legislature further explained that the mechanism for sealing juvenile records existed so that juveniles can overcome prejudice and reintegrate into society. LAWS OF 2014, ch. 175, § 1.

---

[3]  Available at: http://leg.wa.gov/CodeReviser/documents/sessionlaw/1979c155.pdf

[4]  Available at : http://lawfilesext.leg.wa.gov/biennium/2013-14/Pdf/Bills/Session%20Laws/House/1651-S2.sl.pdf

More recently, the Supreme Court commented on the court's role in applying the juvenile sealing statutes:

> The legislature has always treated juvenile court records as distinctive and as deserving of more confidentiality than other types of records[,] and [Washington] court[s] ha[ve] always given effect to the legislature's judgment in the unique setting of juvenile court records.

*S.J.C.*, 183 Wn.2d at 417.

## II. BARR'S RECORD SEALING

In 1992, the King County Juvenile Court adjudicated Barr guilty of two class A felonies.[5] In 2016, Barr petitioned the juvenile court to seal his two juvenile class A felony adjudications. Barr had not committed a crime during the 16 years prior to requesting his records be sealed, and he had maintained law abiding behavior.

Determining that Barr met all the statutory prerequisites, the juvenile court granted his petition and entered orders sealing Barr's adjudications under RCW 13.50.260, the juvenile records sealing statute. The orders sealed Barr's official juvenile court record, social file, and related agency records. The orders cited RCW 13.50.260 which stated that "the proceedings in the case shall be treated as if they never occurred, and the subject of the records may reply accordingly to any inquiry about the events, the records of which are sealed." The orders also notified Barr that any charging of an adult felony would nullify the sealing order.

Soon after it entered Barr's orders sealing his records, the court entered an order stating that under RCW 9.41.040(4)(a)(ii), Barr qualified for the restoration of his firearm rights because

---

[5] Barr requests us to refrain from naming these offenses because they have been sealed. We honor Barr's request.

Barr complied with the terms of his sentences, spent five years in the community without being convicted of a crime, and because Barr "had no prior felony convictions." Clerk's Papers (CP) at 9.

In 2017, Barr applied for a CPL through the Snohomish County Sheriff's Office. The Sheriff denied Barr's application listing his two juvenile class A felony adjudications as the basis for the denial.

Barr then filed a petition in Thurston County Superior Court seeking a writ of mandamus under RCW 9.41.0975.[6] Barr requested the court to grant his writ and to direct the Sheriff to issue him a CPL. Barr argued that the Sheriff had an affirmative duty to issue a CPL to every applicant unless the applicant was ineligible to possess a firearm under state law or federal law. Specifically, Barr argued that his sealed juvenile adjudications did not exist because under RCW 13.50.260(6)(a), sealed adjudications "shall be treated as if they never occurred," and, therefore, he was not prohibited from possession of a firearm under RCW 9.41.040(4), Washington's possession of a firearm statute.

Barr further argued that he was likewise not prohibited from possessing a firearm under federal law. He asserted that under 18 U.S.C. § 921(a)((20), the federal firearm statute, federal law looks to the jurisdiction of conviction to determine whether an offense is a "conviction" for purposes of federal firearm law. CP at 33. Barr claimed that because his Washington adjudications were sealed, he did not have a prohibitory conviction under federal law.

---

[6] RCW 9.41.0975 provides in relevant part:
> (2) An application may be made to a court of competent jurisdiction for a writ of mandamus:
> (a) Directing an issuing agency to issue a concealed pistol license or alien firearm license wrongfully refused.

The superior court denied Barr's petition for a writ of mandamus. Barr appeals.

ANALYSIS

I. WRIT OF MANDAMUS IMPROPERLY DENIED

Barr argues that the superior court improperly denied his petition for a writ of mandamus. Barr claims that the Sheriff breached its duty to issue him a CPL because his sealed adjudications are treated as if they never occurred under the juvenile sealing statute and do not prohibit him from possessing a firearm. The Sheriff argues that sealing does not "restore" Barr's firearm rights because he is ineligible to possess a firearm under RCW 9.41.040 and that state and federal cases to the contrary are mistaken. We agree with Barr.

A. *Legal Principles: Writs of Mandamus, Juvenile Records, CPLs*

1. *Writs of Mandamus*

A court may issue a writ of mandamus, "to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." RCW 7.16.160. Additionally, RCW 9.41.0975(2)(a) specifically authorizes a petition for a writ of mandamus requesting that the court direct "an issuing agency to issue a concealed pistol license or alien firearm license wrongfully refused."

An applicant must satisfy three elements before a writ will issue: (1) the party subject to the writ is under a clear duty to act; (2) the applicant has no plain, speedy and adequate remedy in the ordinary course of law; and (3) the applicant is beneficially interested. *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003). This dispute involves only the first element—whether the Sheriff had a clear duty to issue Barr a CPL. To determine whether the

6

Sheriff had a clear duty to act, we must look to the statutes governing sealing juvenile records

and issuance of CPLs.

2. *Sealing Juvenile Records*

The juvenile record sealing statute provides that once a convicted person meets certain

criteria,[7] a person can petition the court to "order the sealing of the official juvenile court record,

---

[7] RCW 13.50.260(4)(a) through (c) describe the criteria that must be met for sealing to occur and provide:

> (a) The court shall grant any motion to seal records for class A offenses made pursuant to subsection (3) of this section if:
> (i) Since the last date of release from confinement, including full-time residential treatment, if any, or entry of disposition, the person has spent five consecutive years in the community without committing any offense or crime that subsequently results in an adjudication or conviction;
> (ii) No proceeding is pending against the moving party seeking the conviction of a juvenile offense or a criminal offense;
> (iii) No proceeding is pending seeking the formation of a diversion agreement with that person;
> (iv) The person is no longer required to register as a sex offender under RCW 9A.44.130 or has been relieved of the duty to register under RCW 9A.44.143 if the person was convicted of a sex offense;
> (v) The person has not been convicted of rape in the first degree, rape in the second degree, or indecent liberties that was actually committed with forcible compulsion; and
> (vi) The person has paid the full amount of restitution owing to the individual victim named in the restitution order, excluding restitution owed to any insurance provider authorized under Title 48 RCW.
> (b) The court shall grant any motion to seal records for class B, class C, gross misdemeanor, and misdemeanor offenses and diversions made under subsection (3) of this section if:
> (i) Since the date of last release from confinement, including full-time residential treatment, if any, entry of disposition, or completion of the diversion agreement, the person has spent two consecutive years in the community without being convicted of any offense or crime;
> (ii) No proceeding is pending against the moving party seeking the conviction of a juvenile offense or a criminal offense;
> (iii) No proceeding is pending seeking the formation of a diversion agreement with that person;

No. 50623-8-II

the social file, and records of the court and of any other agency in the case." RCW 13.50.260(3).

Once a person receives a court order sealing their juvenile court records,

> [t]hereafter, the proceedings in the case shall be *treated as if they never occurred*, and the subject of the records may reply accordingly to any inquiry about the events, records of which are sealed. Any agency shall reply to any inquiry concerning confidential or sealed records that records are confidential, and no information can be given about the existence or nonexistence of records concerning an individual.

RCW 13.50.260(6)(a) (emphasis added). After receiving an order sealing their juvenile records and adjudications, the juvenile offender is treated as not having "previously been convicted" under RCW 9.41.040(3) for firearm possession purposes. *Nelson v. State*, 120 Wn. App. 470, 480, 85 P.3d 912 (2003).

   3. *Issuing CPLs*

   RCW 9.41.070 governs the issuance of CPL in Washington. RCW 9.41.070(1)(a) states that the sheriff of a county shall issue a CPL to an applicant and provides that an applicant will not be issued a CPL where

> [h]e or she is ineligible to possess a firearm under the provisions of RCW 9.41.040 . . . or is prohibited from possessing a firearm under federal law.

Therefore, whether a person can obtain a CPL depends on whether they are eligible to possess a firearm under state and federal law.

---

   (iv) The person is no longer required to register as a sex offender under RCW 9A.44.130 or has been relieved of the duty to register under RCW 9A.44.143 if the person was convicted of a sex offense; and
   (v) The person has paid the full amount of restitution owing to the individual victim named in the restitution order, excluding restitution owed to any insurance provider authorized under Title 48 RCW.
   (c) Notwithstanding the requirements in (a) or (b) of this subsection, the court shall grant any motion to seal records of any deferred disposition vacated under RCW 13.40.127(9) prior to June 7, 2012, if restitution has been paid and the person is eighteen years of age or older at the time of the motion.

RCW 9.41.040(1)(a) provides:

A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense as defined in this chapter.

It is undisputed that Barr's juvenile class A felonies constitute "serious offenses." Br. of App. at 2; Br. of Resp't at 5.

Additionally, RCW 9.41.040(3) provides:

Notwithstanding RCW 9.41.047[8] or any other provisions of law, as used in this chapter, a person has been "convicted", whether in an adult court or adjudicated in a juvenile court, at such time as a plea of guilty has been accepted, or a verdict of guilty has been filed, notwithstanding the pendency of any future proceedings including but not limited to sentencing or disposition, post-trial or post-fact-finding motions, and appeals. . . . A person *shall not be precluded from possession of a firearm if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation,* or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction or disposition has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence. Where no record of the court's disposition of the charges can be found, there shall be a rebuttable presumption that the person was not convicted of the charge.

RCW 9.41.040(3) (emphasis added).

4. *Prior Cases Analyzing the Effect of a Sealed Juvenile Record on Firearm Rights*

In *Nelson*, Nelson committed certain "serious offenses" as a juvenile. 120 Wn. App. at 472. Nelson later received an order "sealing and expunging his juvenile record under former RCW 13.50.050(11) (2000) (later recodified as RCW 13.50.260(6)(a)). *Nelson*, 120 Wn. App. at 473. Nelson then filed a petition to restore his firearm rights, which the superior court denied. *Nelson*, 120 Wn. App. at 474.

---

[8] RCW 9.41.047 governs restoration of firearm possession rights.

On appeal, the court determined that the issue was whether Nelson's sealed juvenile adjudications prohibited him from possessing a firearm. *Nelson*, 120 Wn. App. at 476. The State argued that Nelson could not possess a firearm until his adjudications were "nullified by pardon or other equivalent procedure" as listed in the firearm statute. *Nelson*, 120 Wn. App. at 477. However, the court disagreed and held that the language of the sealing statute was plain and that after receiving a sealing order, a defendant's juvenile adjudications are "treated as if they never occurred." *Nelson*, 120 Wn. App. at 479. The court further held that

> [i]f the proceedings never occurred, logically the end result—a conviction—never occurred either. The plain language of the expungement statute entitles [a person] to act and be treated as if he has not previously been convicted. If he has not previously been convicted, he may legally possess firearms.

*Nelson*, at 479-80.

In *Siperek v. United States*, 270 F. Supp. 3d 1242, 1251 (W.D. Wash. 2017), the District Court for the Western District of Washington recently came to the same conclusion as *Nelson*. The court noted that the federal law at issue dictated that what constitutes a conviction under federal law is determined in accordance with Washington law. *Siperek*, 270 F. Supp. 3d at 1249. The court then relied on *Nelson* to determine that Washington's juvenile sealing statute treated a person's sealed convictions as not having occurred and therefore a person was not prevented from possessing a firearm under 18 U.S.C. § 921(a)(20) if their juvenile record was sealed. *Siperek*, 270 F. Supp. 3d at 1249.

5. *Standard of Review*

We review writs of mandamus under two separate standards of review, depending on the question reviewed. *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 648-49, 310 P.3d 804, 812 (2013). A writ of mandamus "may be issued by any court . . . to compel the

10

performance of an act which the law especially enjoins as a duty . . . ." RCW 7.16.160. "The determination of whether a statute specifies a duty that the person must perform is a question of law." *River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001). We review questions of law de novo. *City of Bonney Lake v. Kanany*, 185 Wn. App. 309, 314, 340 P.3d 965 (2014). Because we review questions of law de novo, we review de novo whether a statute imposes a duty upon the Sheriff to issue Barr a CPL.

B.      *Sealed Juvenile Record Not a Conviction*

Barr argues that *Nelson* controls here and that his adjudications do not prohibit him from possessing a firearm or obtaining a CPL. We agree.

Barr's criminal record includes two juvenile class A felony adjudications. The juvenile court issued two sealing orders under RCW 13.50.260. These orders mandated the sealing of Barr's entire juvenile record, including his two class A felony adjudications. The sealing orders stated that Barr's juvenile proceeding were to be treated as if they never occurred and also stated that Barr could reply to any inquiry about the juvenile proceedings by stating that they never occurred.

Applying the rule established in *Nelson* to Barr's case, we hold that the Sheriff had a legal duty to issue Barr a CPL. Barr has met all the statutory conditions to receive the sealing of his class A felony adjudications, including remaining conviction free for 16 years, well over the five year period required by the sealing statute. RCW 13.50.260(4). Because of his law abiding behavior and fulfilment of other conditions, the juvenile court properly sealed Barr's records. Because of this valid sealing, Barr's juvenile proceedings are treated as if they "never occurred," and Barr is therefore entitled to "act and be treated as if he has not previously been convicted."

*Nelson*, 120 Wn. App. at 479-80. Because Barr is treated as not having been previously adjudicated of the juvenile offenses, he is neither prohibited from possessing a firearm under RCW 9.41.040 nor prevented from receiving a CPL. *Nelson*, 120 Wn. App. at 479-80.

Accordingly, the reasoning of *Nelson* and the applicable statutes show that Barr is not precluded from possessing a firearm and that the Sheriff breached its clear legal duty by denying Barr a CPL.

C.      *Sheriff's Arguments*

The Sheriff makes several arguments in support of the superior court's denial of Barr's writ of mandamus. The Sheriff argues that (1) *Nelson* does not apply and is no longer good law, (2) Barr's reading of the statutes conflicts with principles of statutory construction, (3) Barr's interpretation conflicts with a State Attorney General's opinion, (4) adopting Barr's interpretation would lead to practical difficulties and absurd results, and (5) RCW 9.41.040 provides the exclusive mechanism for restoring firearm rights. We disagree.

1. *Nelson Applies*

The Sheriff attempts to distinguish *Nelson*, by arguing that Barr's adjudications are class A felony convictions whereas it is unclear whether Nelson's adjudication was a class A felony. This is a distinction without a difference. The *Nelson* decision did not turn on the felony class, and the sealing statute does not differentiate between felony classes. The dispositive component of the sealing statute here is the phrase "the proceedings in the case shall be treated as if they never occurred." The court in *Nelson* based its decision on this language and explained, "If the proceedings never occurred, logically the end result—a conviction—never occurred either." *Nelson*, 120 Wn. App. at 479.

12

The Sheriff also argues that *Nelson* is no longer good law because the legislature has significantly amended the sealing statute since *Nelson*, allowing greater access to sealed records. The Sheriff claims that these subsequent amendments show the legislature did not intend the sealing of juvenile records to affect the right to possess a firearm and did not intend for sealed adjudications to be treated as "non-existent" for all purposes. Br. of Resp't at 10. We disagree.

The legislature is presumed to be aware of judicial interpretation of its enactments, and so, absent a legislative change, we presume that the legislature approves of the courts' interpretation. *Riehl v. Foodmaker, Inc*., 152 Wn.2d 138, 147, 94 P.3d 930 (2004). The Sheriff is correct that the legislature has amended the sealing statute since *Nelson*. In fact, the legislature has amended the RCW 13.50.260 eight times since *Nelson*.[9] It is also true that some of the amendments allow greater access to the sealed information by law enforcement, juvenile justice agencies, and the courts. *See* LAWS OF 2014, ch. 175, § 3; RCW 13.50.260(8)(c); *see also* LAWS OF 2015 ch. 265, § 3; RCW13.50.260(8)(d). However, despite its numerous amendments, the legislature has never altered the provision stating that sealed adjudications are "treated as if they never occurred." RCW 13.50.260(6)(a).

It is abundantly clear that the legislature knows how to and certainly could have amended the sealing statute if it so wished after the *Nelson* decision. For example, the legislature took action after *State v. R.P.H.*, 173 Wn.2d 199, 265 P.3d 890 (2011). The court in *R.P.H.* held that, the termination of a juvenile offender's obligation to register as a sex offender entitled him to

---

[9] *See* LAWS OF 2015, ch. 265, § 3; LAWS OF 2014 ch. 175, § 3; LAWS OF 2012 ch. 177, § 2; LAWS OF 2011 ch. 338, § 4; LAWS OF 2011 ch. 333, § 4; LAWS OF 2010 ch. 150, § 2; LAWS OF 2008 ch. 221, § 1; LAWS OF 2004 ch. 42, § 1.

receive a certificate of rehabilitation, which allowed the offender to have his firearm rights restored. *R.P.H.*, 173 Wn.2d at 200. In response to the court's decision, the legislature explicitly added a provision to the juvenile sex offender statute stating that "[i]f a person is relieved of the duty to register [. . .] the relief of registration does not constitute a certificate of rehabilitation, or the equivalent of a certificate of rehabilitation, for the purposes of restoration of firearm possession under RCW 9.41.040." LAWS OF 2015 ch. 261, § 9(6).

Unlike *R.P.H.*, there has been no legislative amendment after *Nelson* regarding the treatment of a prior juvenile's sealed felony adjudications for purposes of firearm possession. The amendments allowing greater access to sealed records do not evince an intent to modify the language of *Nelson*. Instead, the legislature has clearly acquiesced to the court's interpretation of the sealing statute's mandate that sealed felony adjudications are "treated as if they never occurred" and are not prohibitions to possessing a firearm.[10]

The Sheriff asserts that in 2014 and 2015, the legislature amended former RCW 13.50.260(8) (2011) to allow criminal justice agencies expanded access to sealed juvenile information. The Sheriff further claims that because the sealed records appear in a Washington State Patrol database, the records cannot be treated as if they never occurred. The Sheriff asserts that this expanded access therefore means that sealed convictions are nonexistent for certain purposes but not all. We disagree.

---

[10] As a corollary to its argument that the legislative amendments affect Barr's rights, the Sheriff argues that because the statute has been amended to expand access to the sealed records, Barr cannot take advantage of RCW 9.41.040(3)'s rebuttable presumption that his adjudications did not occur. But, Barr does not need to avail himself of a rebuttable presumption based on an inability to find a court record. The sealing statute is clear that by having his records sealed, Barr's adjudications are treated as if they never occurred.

14

Although the legislature amended RCW 13.50.260(8) to provide some agencies and law enforcement access to sealed juveniles records, the amended statute does not specifically allow those agencies to use the records to prohibit a person from obtaining a firearm. The relevant portions of RCW 13.50.260(8) state:

> (8)(a) Any adjudication of a juvenile offense or a crime subsequent to sealing has the effect of nullifying a sealing order; however, the court may order the juvenile court record resealed upon disposition of the subsequent matter if the case meets the sealing criteria under this section and the court record has not previously been resealed.
> (b) Any charging of an adult felony subsequent to the sealing has the effect of nullifying the sealing order.
> (c) The administrative office of the courts shall ensure that the superior court judicial information system provides prosecutors access to information on the existence of sealed juvenile records.
> (d) The Washington state patrol shall ensure that the Washington state identification system provides criminal justice agencies access to sealed juvenile records information.

The Washington State Patrol must guarantee access to sealed records to criminal justice agencies, and the courts must ensure prosecutors have access to the information. However, these statutes do not authorize criminal justice agencies to treat these adjudications in a manner contrary to 13.50.260(6)(a), which requires them to treat the adjudications "as if they never occurred." The Sheriff does not cite to any authority showing that the Sheriff or other agencies can do anything more with the records besides access them. It does not follow that simply having access to records allows an agency to use those records to deny a CPL application.

The Sheriff essentially argues that because it has access to the sealed records, RCW 13.50.260 allows sealed records to be treated as if they never occurred for *certain* purposes, but not all purposes, such as for seeking a CPL. However, the statute simply states that once sealed, the proceedings shall be treated as if they never occurred. The Sheriff's reading impermissibly

15

adds words and concepts to the statute that simply are not there. Because of the legislature's acquiescence and without clear indication from the legislature demanding otherwise, we will continue to follow *Nelson* and the language of the sealing statute. Accordingly, sealed juvenile records shall be treated as if they never occurred, regardless of any agency access.

2. *Our Interpretation Does Not Conflict with Statutory Language or Construction Tenets*

The Sheriff argues that the plain language of RCW 9.41.040 and RCW 13.50.260 compels the conclusion that Barr is unable to restore his firearm rights. The Sheriff also argues that Barr's reading of the statutes violates the "general-specific rule" of statutory construction. We disagree.

The plain language of RCW 9.41.040 and RCW 13.50.260 does not prohibit Barr from restoring his firearm rights because he does not have any prohibitory convictions. The interpretation of a statute is a question of law we review de novo. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). The primary goal of statutory interpretation is to discern and implement the legislature's intent. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). In interpreting a statute, we first look to the plain language of the statute. *Armendariz*, 160 Wn.2d at 110. To determine the plain meaning of a statute, we look at the context of the statue, related provisions, and the statutory scheme as a whole. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). We may also determine the plain meaning of an undefined term from a standard English dictionary. *State v. Barnes*, 189 Wn.2d 492, 496, 403 P.3d 72 (2017). We harmonize statutes whenever possible. *Harmon v. Dep't of Social & Health Services*, 134 Wn.2d 523, 542, 951 P.2d 770 (1998) (citing *Leson v. State*, 72 Wn. App. 558, 563, 864 P.2d 384 (1993).

Division One of this court rejected similar arguments in the *Nelson* case. It held that determining whether sealing the record was akin to a pardon or other equivalent procedure was "putting the cart before the horse," because the plain language of the juvenile record sealing statute entitled Nelson to be treated as if he had not previously been convicted, there was no conviction to be examined under RCW 9.41.040. *Nelson*, 120 Wn. App. at 478-81. The plain language of the sealing statute supports the interpretation that after receiving an order sealing juvenile records and convictions, the juvenile offender is treated as not having "previously been convicted." *Nelson*, 120 Wn. App. at 480. Therefore, under the plain language of RCW 9.41.040, Barr does not have a "conviction" preventing him from firearm possession. *See* RCW 9.41.040(3).

The general-specific rule of statutory interpretation provides that a specific statute prevails over a general statute. *State v. Flores*, 194 Wn. App. 29, 36, 374 P.3d 222 (2016). Therefore, "when a general statute, standing alone, includes the same subject as the special statute and then conflicts with it, the court deems the special statute to be an exception to, or qualification of, the general statute." *Flores*, 194 Wn. App. at 37.

Here, the sealing statute and the firearm statutes do not conflict. Rather, the statutes can be easily harmonized. Under RCW 13.50.260, once a court seals a juvenile record containing a class A felony adjudication, the adjudication is treated as if it never occurred. Next, under the firearm statutes, a CPL applicant with sealed adjudications has no convictions preventing firearm possession. Accordingly, the statutes do not conflict and are easily reconciled.

3. *Attorney General Opinion Is Not Controlling*

The Sheriff also asserts that Barr's interpretation of the sealing statute conflicts with an attorney general's opinion. The Sheriff asserts that the attorney general has previously concluded that under Washington law, other than by receiving a pardon, a person with a class A felony offense could not receive restoration of their firearm rights. We disagree.

In 2002, the attorney general issued an opinion on the availability of persons convicted of Class A felonies to restore their firearm rights. Op. Att'y Gen. 2002 No. 4.[11] The attorney general was asked if there was any statutory procedure for restoring firearm possession right to a person convicted of a class A felony. Op. Att'y Gen. 2002 No. 4. In response, the attorney general opined that the only way to restore firearm rights to persons convicted of class A felonies was through a pardon by the governor containing a specific finding of rehabilitation or innocence. Op. Att'y Gen. 2002 No. 4.

The Sheriff's reliance on the attorney general opinion about convicted persons and firearm possession, is misplaced. Although we give opinions of the attorney general considerable weight, they are not controlling on this court. *Skagit Cty. Pub. Hosp. Dist. No. 304 v. Skagit Cty. Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 725, 305 P.3d 1079 (2013). Further, we give less deference to attorney general opinions when they involve issues of statutory interpretation. *Skagit Cty. Pub. Hosp. Dist.*, 177 Wn.2d at 725.

More importantly, the attorney general published its opinion on firearm rights restoration in 2002, a year before the *Nelson* case was decided. Because of this, the attorney general did not

---

[11] Opinion available at http://www.atg.wa.gov/ago-opinions/when-convicted-persons-are-entitled-restoration-firearm-possession-rights.

have the benefit of case law directly on point when drafting its opinion. Accordingly, the attorney general's opinion is not useful and is ultimately not binding on this court.

4. *No Absurd Results*

The Sheriff next argues that adopting Barr's interpretation would lead to practical difficulties and absurd results. We disagree.

In interpreting statutes, we avoid reading statutes in a manner that produces absurd results. *State v. Eaton*, 168 Wn.2d 476, 480, 229 P.3d 704 (2010). Here, the Sheriff correctly points out that if an individual who has a sealed juvenile adjudication is ever adjudicated as a juvenile or charged with a new felony, the sealed file is automatically unsealed under RCW 13.50.260(8). The Sheriff argues that this requirement complicates the process of revoking and restoring firearm rights and creates a problem of who must provide notice of revocation of firearm rights to people whose adjudications become unsealed. However, RCW 9.41.047(1)(a) requires that a defendant be notified of his or her ineligibility to possess a firearm only upon certain conditions, none of which are present here. Barr has already been notified of his ineligibility to possess firearms based on the adjudications that were sealed. Moreover, the order sealing his juvenile records notified him that the order would be nullified if he were charged with a felony. It would not be absurd or unfair if the unsealing of these adjudications again rendered him ineligible to possess a firearm or a CPL.

5. *RCW 9.41.040's Restoration Provision Does Not Control*

The Sheriff argues that sealing does not restore firearm rights because RCW 9.41.040 provides the exclusive mechanism for restoring firearm rights. We disagree.

19

As similarly discussed in *Nelson*, the Sheriff's argument puts the cart before the horse. *Nelson*, 120 Wn. App. at 478. Barr received orders sealing his class A juvenile adjudications and, therefore, has no conviction that prohibits him from possessing a firearm under RCW 9.41.040. He is likewise not prohibited from receiving a CPL under state law. Because we consider Barr as having no conviction, his rights are not "restored" nor do they need restoring. Accordingly, RCW 9.41.040's restoration provision does not control here.

For the above reasons, the Sheriff's arguments in support of the court's denial of Barr's writ of mandamus and the Sheriff's ultimate denial of Barr's CPL license fail.

D.      *Possession allowed under Federal law*

Finally, Barr argues that because he is not prohibited from possessing a firearm under Washington law, he is also not prohibited from possessing a firearm under federal law. The Sheriff argues that the sealing statute does not remove all effects of the adjudication and that sealing does not qualify as "expunged or set aside" as required for firearm possession under federal law. Br. of Resp't at 24. We agree with Barr.

The federal gun control act makes it unlawful for any person convicted of a crime to own or possess a firearm. 18 U.S.C. § 922(g)(1). However, under the act:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). Therefore, whether or not the Sheriff breached its duty to issue Barr a CPL depends on how Washington law treats Barr's class A felony adjudications in light of their sealing.

As discussed above, under RCW 13.50.260(6)(a), sealed juvenile adjudications in Washington jurisdictions are to be treated as if they never occurred, and therefore, the adjudications do not exist to prohibit firearm possession. *Nelson*, 120 Wn. App. at 479-80. As a result, Barr does not have any prohibitory convictions under 18 U.S.C. § 921(a)(20).

The District Court for the Western District of Washington recently came to the same conclusion in *Siperek*, 270 F. Supp. 3d at 1242. Relying on *Nelson*, the court determined that a person's sealed juvenile class A felony adjudication in Washington was treated as having never occurred. *Siperek*, 270 F. Supp. 3d at 1249. The court held that because under Washington law, the jurisdiction in which Siperek's criminal proceedings took place, Siperek's sealed juvenile offense should be treated as having never occurred, Siperek had no limitation on legally possessing firearms under 18 U.S.C. § 921(a)(20). *Siperek*, 270 F. Supp. 3d at 1249-50.

Similar to the plaintiff in *Siperek*, because Barr's adjudications are sealed and treated as having never occurred under Washington law, Barr is not prohibited from possessing a firearm under 18 U.S.C. § 921(a)(20). Although the Sheriff argues that sealing does not constitute a "set aside" or an "expungement" under 18 U.S.C. § 921, the sealing statute does allow Barr to treat his adjudications as having never occurred. It would be unnecessary in this case to address whether sealing in Washington equates to a set aside or expungement. The question here is whether Barr has a prohibitory conviction, not whether the sealing process equates to a set aside

21

or expungement.  Because, under Washington law Barr has no conviction that would prevent him from obtaining a firearm he is also not federally precluded from possessing a firearm.

The Sheriff asserts that *Siperek* was not properly decided, and argues that it is in conflict with other federal cases dealing with state and federal firearm laws.  The Sheriff cites to *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1246 (10th Cir. 2008) and *Jennings v. Mukasey*, 511 F.3d 894, 900 (9th Cir. 2007).  But a careful review of these cases reveals that the courts analyzed each on a case-by-case basis, examining how the law of each state affects federal firearm rights.  Moreover, both of these cases are distinguishable because they involve plaintiffs who sought firearm rights after being convicted of misdemeanor domestic violence convictions and because the rights of individuals who were previously convicted of domestic violence convictions are examined under a different statute than the one examined in *Siperek*.

Furthermore, the *Jennings* court held that a state law purporting to expunge a person's conviction did not remove all effects of the conviction and therefore the person could not obtain a firearm under federal law.  *Jennings*, 511 F.3d at 899.  In analyzing the applicable state statute, the *Jennings* court agreed with the state court that held  the state law at issue did not relieve the ex-offender of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for licensure by any state or local agency. *Jennings*, 511 F.3d at 898-99.  Because of this affirmative disclosure obligation, the court held that the state statute did not expunge or eliminate the conviction, and therefore, the convicted person was prohibited from possessing firearms under 18 U.S.C. § 922(g)(9). *Jennings*, 511 F.3d at 899, 901.

Here, even under *Jennings*, the Washington sealing statute would allow Barr access to firearms under federal law. RCW 13.50.260(6)(a) states that after sealing, "proceedings in the case shall be treated as if they never occurred, and the subject of the records may reply accordingly to *any inquiry* about the events, records of which are sealed." (Emphasis added.) Unlike the state statute at issue in *Jennings*, the sealing statute here relieves the person receiving the sealing order from the obligation to disclose the adjudication in response to "any inquiry." Unlike the statute at issue in *Jennings*, Washington's sealing statute treats the adjudication as not existing, and therefore, no affirmative duty to disclose the adjudication in response to a question exists. Therefore, the Sheriff's argument that the cited federal court cases apply to ban Barr's ability to possess a firearm under federal law, fails.

Because Barr received orders sealing his class A felony juvenile adjudications under Washington law and because Washington law requires that his adjudications be treated as if they never occurred, Barr is not prohibited from possessing firearms under federal law.

E. *Conclusion*

As noted above, the only writ of mandamus element at issue here is whether the Sheriff had a clear duty to act. Because Barr's adjudications, after being sealed, were to be treated as if they never occurred, Barr had no prohibition on his ability to possess a firearm under either state or federal law. It is clear the Sheriff had a duty under RCW 9.41.070(1) to issue Barr a CPL and failed to do so.

Accordingly, we reverse and remand the superior court's order denying Barr's writ of mandamus. We remand with instructions to issue Barr's writ of mandamus, requiring the Sheriff to issue Barr a CPL.

No. 50623-8-II

ATTORNEY FEES

Barr requests attorney fees and costs pursuant to RAP 18.1(a) and RCW 9.41.0975. We grant Barr's request.

Under RAP 18.1(a), if applicable law grants a party the right to recover reasonable attorney fees or expenses on review before the Court of Appeals, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the superior court. The statute addressing the writ of mandamus at issue here provides:

> (2) An application may be made to a court of competent jurisdiction for a writ of mandamus:
> (a) Directing an issuing agency to issue a concealed pistol license or alien firearm license wrongfully refused;
> . . . .
> (d) . . . A person granted a writ of mandamus under this subsection (2) shall be awarded reasonable attorneys' fees and costs.

RCW 9.41.0975(2)(d).

Because we reverse the superior court's denial of Barr's writ of mandamus, in effect granting Barr a writ of mandamus, and because RCW 9.41.0975(2)(d) grants a party the right to recover reasonable costs and fees and does not specify that request for fees must be made to the superior court, we hold that Barr is entitled to an award of reasonable attorney fees and costs.

_____
Worswick, P.J.

We concur:

_____
Bjorgen, J.

_____
Sutton, J.

24