# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL DYLAN PEEDE, | No. 57902-2-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Michael D. Peede petitioned the trial court to restore his firearm rights. The trial court denied the petition, relying on at least one of Peede's sealed juvenile adjudications of guilt for a disqualifying felony. Peede appeals.

Peede argues that the trial court erred by misapplying *Barr v. Snohomish County Sheriff* [1] and that under RCW 13.50.260(6)(a), his sealed juvenile adjudications of guilt must be treated as though they never occurred. Following the Washington Supreme Court's reasoning in *Barr* II*,* we hold that the trial court properly considered Peede's sealed juvenile adjudications to determine Peede's eligibility to restore his firearm rights. Thus, the trial court properly denied Peede's petition. We affirm.

## FACTS

Neither party disagrees with the trial court's finding that Peede was adjudicated guilty of

---

[1] 193 Wn.2d 330, 440 P.3d 131 (2019) (*Barr* II).

at least one offense that would disqualify him from restoration of his firearm rights.[2] The parties also agree that records of this juvenile offense have since been sealed.

After the relevant juvenile offense was sealed, Peede filed a petition to restore his firearm rights. The State objected to Peede's petition on the grounds that Peede's sealed juvenile adjudication for a sex offense or class A felony prohibited him from restoring his firearm rights under Washington law. Peede responded that because the records of his offense are sealed, the offense should be treated as if it never occurred and, thus, it should not bar restoration of his firearm rights. The trial court agreed with the State and denied Peede's petition. Peede appeals.

## ANALYSIS

Peede argues that under RCW 13.50.260(6)(a), his juvenile offense should be treated as if it never occurred for purposes of restoring his firearm rights. The State responds that in *Barr* II, the Washington Supreme Court held that sealing under RCW 13.50.260(6)(a) merely hides Peede's adjudication from public view and therefore Peede's sealed juvenile offense still precludes him from petitioning to restore his firearm rights. We agree with the State and follow our recent opinion in *McIntosh v. State*, ___ Wn. App. 2d ___, 544 P.3d 559 (2024).

### I. FIREARM RESTORATION

Former RCW 9.41.040(1)(a) (2022) prohibited a person convicted of any serious offense from possessing a firearm.[3] Under former RCW 9.41.010(33) (2022), serious offenses included

---

[2] It is not clear from our record whether Peede has more than one disqualifying juvenile offense. Below, we refer to a single disqualifying offense because it appears the parties agree there was at least one disqualifying offense.

[3] In 2023, the legislature recodified the provisions for restoration of firearm rights from former RCW 9.41.040(4) to RCW 9.41.041. LAWS OF 2023, ch. 295, § 4.

violent or sexually motivated felonies. While a person who has been convicted of a serious offense could petition to have their right to possess firearms restored under former RCW 9.41.040(4)(a), they were disqualified from doing so if that serious offense was a sex offense or a class A felony. *Id*. Further, a person could not petition to restore their firearm rights if a prior felony conviction would be counted as part of their offender score. Former RCW 9.41.040(4)(a)(ii)(A).

RCW 13.50.260 provides that juvenile records can be sealed. RCW 13.50.260(6)(a) states that once a juvenile conviction is sealed, "the proceedings in the case shall be treated as if they never occurred."

Whether the superior court properly applied former RCW 9.41.040(4) to the facts, is a question we review de novo. *McIntosh*, 544 P.3d at 561. We must also interpret the juvenile sealing statute, RCW 13.50.260. Questions of statutory interpretation are also reviewed de novo. *Id*.

## II. SEALED JUVENILE CONVICTIONS AS DISQUALIFYING OFFENSES

The parties agree that Peede's juvenile offense is one that would ordinarily disqualify him from firearm right restoration. They dispute whether the sealing of his offense under RCW 13.50.260(6)(a) prohibited the trial court from considering the offense when determining whether to grant his petition to restore his firearm rights. We recently answered this question in *McIntosh*. In *McIntosh,* we relied on the Washington Supreme Court's reasoning in *Barr* II.

A.       *Barr* II

In *Barr* II, the Snohomish County Sheriff denied Barr's application for a concealed pistol license based on Barr's two sealed juvenile adjudications for class A felonies. 193 Wn.2d at 333. Washington's concealed pistol license statute required that issuing authorities, like the sheriff, deny a concealed pistol license to "anyone who is found to be prohibited from possessing a firearm

under federal or state law." RCW 9.41.070(2)(b). The federal law at issue in *Barr* II prohibited firearm possession if a person had been convicted of a crime that was punishable by a prison term exceeding one year unless subsequent action, such as expungement, caused the conviction to no longer be "'considered a conviction.'" 193 Wn.2d at 335-36 (quoting 18 U.S.C § 921(a)(20)(B)). The prison terms for Barr's two adjudications exceeded one year. *Id*. at 336 n.4. Thus, if sealed adjudications were considered convictions under federal law, Washington's statute required the sheriff to deny Barr's license application. The sheriff concluded that Barr's offenses were considered convictions under federal law regardless of whether they were sealed. *Id*. at 333-34.

Barr challenged the denial of his license application. *Id*. at 334. The federal law at issue relied on the definition of "conviction" under state law, *id*. at 335, and Washington's sealing statute stated that after a juvenile adjudication is sealed, "the proceedings in the case shall be treated as if they never occurred." RCW 13.50.260(6)(a). Therefore, according to Barr, this language meant that his sealed adjudications were not "convictions" for purposes of the federal statute. *Barr* II, 193 Wn.2d at 336-37.

The Washington Supreme Court disagreed. It held that Washington's sealing statute did not determine whether Barr's sealed adjudications constituted "convictions" for purposes of the federal statute. *Id*. at 337. The court explained that under federal law, the mere existence of a conviction prohibited firearm possession, regardless of whether the adjudication or conviction was sealed. *Id*. Instead, the court considered only whether the adjudications existed, and whether a subsequent event like expungement had since rendered them "no longer 'considered a conviction.'" *Id*. (quoting 18 U.S.C § 921(a)(20)(B)).

Relevant here, the court explained that sealing orders only hide a record from public view—they do not cause a conviction or adjudication to cease to exist. *Id*. at 337. The court pointed to the fact that a sealing order will be nullified if a person is charged with an adult felony after their record has been sealed. *Id.*; *see also* RCW 13.50.260(8)(b). If an adjudication can be automatically unsealed and if it can then have consequences in future sentencings, then it must continue to exist despite the sealing. *Barr* II, 193 Wn.2d at 337.

The court went on to distinguish sealing from the other events that would render an adjudication no longer "'considered a conviction'" under federal law. *Id*. at 338 (quoting 18 U.S.C § 921(a)(20)(B)). The federal law at issue stated that "[a]ny conviction which has been expunged . . . shall not be considered a conviction for purposes of this chapter." 18 U.S.C. § 921(a)(20)(B). The *Barr* II court then rejected prior cases that stated or suggested that sealing was equivalent to expungement. 193 Wn.2d at 339. Unlike expungement, where records are destroyed, sealing "merely hides a record from view of the general public." *Id*. Thus, although they were hidden, there were still official records of Barr's juvenile adjudications. *Id*. Therefore, they were still considered convictions for the purposes of application of the concealed pistol license statutes. *Id*. at 339-40.

Throughout its opinion, the *Barr* II court limited its decision to only the application of federal firearm possession laws. It "express[ed] no opinion on Barr's right to possess firearms as a matter of state law," and emphasized that *Barr* II posed "a narrow question to which [the court] provide[d] a narrow answer. The sheriff was not required to issue Barr a [concealed pistol license] because . . . Barr's class A felony adjudications are predicate, disqualifying convictions for purposes of 18 U.S.C. § 922(g)." *Id*. at 340.

Nevertheless, the Supreme Court's analysis in *Barr* II is informative to the extent the court opined about issues that also arise under state law when a person asks a court to restore their firearm rights.

B.    Caselaw Prior to *Barr* II

Despite the *Barr* II court's statements that its narrow holding impacted only federal firearm laws, the court's reasoning plainly undermined our previous holdings addressing how Washington's sealing statute interacts with Washington's firearm possession laws—especially how we applied the phrase "the proceedings in the case shall be treated as if they never occurred." RCW 13.50.260(6)(a).

Before *Barr* II, we relied primarily on that phrase to determine how we treated sealed juvenile adjudications under state law. For example, in *Nelson v State*, 120 Wn. App. 470, 85 P.3d 912 (2003), Division One held that juvenile adjudications that had been both sealed and expunged did not bar petitions to restore firearm rights. The fact that Nelson's juvenile adjudications had been expunged was a factor. *Id*. at 480-81. However, the *Nelson* court also explained that "even if the fact of Nelson's juvenile convictions is undisputed, legally the [trial] court could not conclude he had been 'convicted' for purposes of the firearm statute[,] because the court was obligated to treat the juvenile proceedings as if they never occurred."[4] *Id*. at 480.

This language was also fundamental to our later opinion in *Barr v. Snohomish County*, 4 Wn. App. 2d 85, 419 P.3d 867 (2018) (*Barr* I), *rev'd*, 193 Wn.2d 330. In *Barr* I, we held that sealed juvenile adjudications did not bar firearm possession under state law. *Id*. at 102-03. Notably, in

---

[4] *Nelson* interpreted former RCW 13.50.050(14) (2001)—a prior version of our state's sealing statute with nearly identical language to its modern counterpart.

contrast with *Nelson*, Barr's juvenile adjudications were not expunged—they were merely sealed. *Id.* at 91. This difference did not change our analysis of how Washington's sealing statute affected people's ability to possess firearms because "[t]he dispositive component of the sealing statute here is the phrase 'the proceedings in the case shall be treated as if they never occurred.'" *Id.* at 99.

Further, we rejected attempts to venture beyond the statute's plain language—such as arguments that criminal justice agencies' access to sealed convictions permitted consideration of the sealed adjudication in some contexts:

> The Washington State Patrol must guarantee access to sealed records to criminal justice agencies, and the courts must ensure prosecutors have access to the information. However, these statutes do not authorize criminal justice agencies to treat these adjudications in a manner contrary to RCW 13.50.260(6)(a), which requires them to treat the adjudications "as if they never occurred."

*Id.* at 102. Thus, before *Barr* II, we read Washington's sealing statute to mean that a person's sealed juvenile adjudications did not prohibit them from owning a firearm. We treated sealed juvenile adjudications "as if they never occurred."

C.     *Barr* II's Impact on Our Previous State Law Analysis

*Barr* II did not explicitly overrule our conclusion in *Barr* I, that sealed adjudications did not bar firearm possession under state law. But *Barr* II's discussion of Washington's sealing statute diverged from the reasoning our conclusion depended on in multiple ways. As discussed above, the *Barr* II court explained that sealed adjudications do continue to exist for purposes of federal firearm possession statutes—they are just "invisible to most people." 193 Wn.2d at 337. And the court reasoned that when the legislature enacted the concealed pistol license statute, it intended that law enforcement would use sealed adjudications to determine whether to grant concealed

pistol license applications. *Id.* at 337-38. Specifically, the court pointed to RCW 9.41.070(2)(a), which required the sheriff to check "'the Washington state patrol electronic database'" and RCW 13.50.260(8)(d), which required that "the state patrol database must 'provide criminal justice agencies access to sealed juvenile records information.'" *Id.* at 337 (alteration omitted). The court reasoned that if the sheriff was required to search a database that contained sealed adjudications, "then the legislature must have intended that law enforcement use information about the sealed convictions in determining whether to issue a [concealed pistol license]." *Id.* at 337-38. Thus, according to the Supreme Court, the phrase "the proceedings shall be treated as if they never occurred," was not alone dispositive in circumstances where other statutes or provisions of RCW 13.50.260 suggested otherwise.

While this reasoning was part of the court's federal statutory analysis, the court's description of sealing's basic function undermined our conclusion that sealing essentially did remove adjudications from existence. *See Barr* I, 4 Wn. App. 2d at 103 ("sealed juvenile records shall be treated as if they never occurred, regardless of any agency access.").

The *Barr* II court also gave little weight to the plain language analysis in *Nelson*. Instead, the court pointed to the functional difference between expungement, where records are destroyed, and sealing, where records are "merely" hidden. 193 Wn.2d at 338-39. In fact, the court explicitly rejected the idea that sealing and expungement have the same effect on one's ability to possess firearms. *Id.* at 339. Due to the differences between sealing and expungement, the Supreme Court declined to apply *Nelson* in cases where adjudications are merely sealed but not expunged. *Id.* This emphasis on Nelson's expungement undermined our reasoning in *Barr* I, which relied on *Nelson* even though Barr's adjudications had not been expunged. 4 Wn. App. 2d at 98-103.

8

In sum, although the *Barr* II court limited its holding to an application of federal law related to concealed pistol licenses, the court's reasoning plainly undermined *Nelson* and *Barr* I's reliance on the language of the sealing statute alone to prohibit consideration of sealed adjudications. Instead, the *Barr* II court's reasoning established that sealed adjudications continue to exist under state law even after they are sealed.

D.      Post-*Barr* II Case Law

We resolved the incompatibility between our previous cases and *Barr* II with our holding in *McIntosh*. In that case, the trial court denied McIntosh's petition to restore his firearm rights. *McIntosh*, 544 P.3d at 560. Prior to his petition, McIntosh was adjudicated guilty of multiple class A sex offenses in juvenile court. *Id*. The juvenile adjudications were sealed under RCW 13.50.260. *Id*. McIntosh argued that these adjudications should not bar his petition relying on our pre-*Barr* II caselaw that treated sealed adjudications "as if they never occurred." *Id*. at 560-61.

We disagreed with McIntosh and relied on *Barr* II to depart from *Nelson* and *Barr* I. We specifically abandoned *Nelson*'s reasoning. Like the Supreme Court, we distinguished *Nelson* on its facts, noting that the destruction of records via expungement is markedly different than sealing alone. *Id*. at 563. Once we departed from *Nelson*, we followed *Barr* II's approach and looked to other sections of RCW 13.50.260, as well as other state firearm statutes in context, to understand the effect of the phrase, "the proceedings shall be treated as if they never occurred." *Id*. at 563-64.

First, we reasoned that allowing sealed adjudications to have some remaining effect is "consistent with other provisions of the [sealing] statute [that] clearly contemplate the conviction remain accessible to certain agencies." *Id*. at 563. For instance, under state law, prosecutors and both in-state and out-of-state criminal justice agencies must have access to sealed juvenile records.

RCW 13.50.260(8)(c)-(e). This reasoning also mirrored that of the Supreme Court in *Barr* II: "If the legislature requires law enforcement to search a database that must contain information on sealed convictions, then the legislature must have intended that law enforcement use information about the sealed convictions in determining whether to issue a [concealed pistol license]." 193 Wn.2d at 337-38.

Second, we noted that sealing orders already permit additional use of adjudications. *McIntosh*, 544 P.3d at 564. For instance, class A and prior felony convictions for sex offenses are always included in offender scores, regardless of sealing. RCW 9.94A.525(2)(a). Finally, we reasoned that the fact that sealing orders are automatically nullified by reoffending, RCW 13.50.260(8)(b), supported the fact that the basic function of a sealing order is to shield adjudications from public view. *McIntosh*, 544 P.3d at 564. Thus, we held the trial court properly denied McIntosh's petition because his sealed adjudications could be considered. *Id*.

E.     Peede's Petition to Restore His Firearm Rights

Here, we follow *Barr* II and our holding in *McIntosh*. Just like the plaintiff in *McIntosh*, Peede has a juvenile adjudication that prohibits the trial court from restoring his firearm rights under former RCW 9.41.040(4). For the reasons discussed in *McIntosh*, the fact that Peede's adjudication is sealed does not change the fact that it disqualifies him from petitioning to restore his firearm rights.

Our holding is further supported by former RCW 9.41.040(4)(a)(ii)(A), which provided that an "individual may petition a court of record to have [their] right to possess a firearm restored . . . . if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525." As we noted in *McIntosh*, "'[c]lass

10

A and sex prior felony convictions shall always be included in the offender score.'" 544 P.3d at 564 (quoting RCW 9.94A.525(2)(a)). Thus, our firearm possession statute contemplates the inclusion of sealed class A felony offenses and felony sex offenses in evaluating petitions to restore firearm rights where they would be counted in an offender score. Peede has not established that he has overcome this additional barrier to restoration of his firearm rights.

Therefore, we affirm the trial court's denial of Peede's petition to restore his firearm rights.

### III. FIREARM POSSESSION

In addition to the question of whether Peede's sealed juvenile adjudication allows restoration of his firearm rights, in his brief, Peede also raises the question of whether his sealed conviction bars him from possessing firearms under former RCW 9.41.040. However, we review trial court decisions that are actually designated in the notice of appeal. RAP 2.4(a). In his notice of appeal, Peede seeks review of "the trial[] court[']s decisions and all written rulings or findings reduced to the judgment and sentence entered herein." Clerk's Papers at 10. The only orders attached to Peede's notice of appeal, or at issue in this case, are the trial court's order denying firearm restoration and its order denying Peede's motion for reconsideration of that order. There are no other orders in our record that would implicate Peede's right to possess firearms independent from his right to petition to restore his firearm rights. Thus, whether Peede's sealed juvenile conviction independently impacts his ability to possess firearms under RCW 9.41.040 is outside our scope of review.

### CONCLUSION

We affirm.

57902-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, P.J.

Che, J.

12